CHRISTINA SPLITTORF, as Administratrix, etc., Appellant, *v.* THE STATE OF NEW YORK, Respondent.

No claim, on behalf of a citizen, can be maintained against the state for injuries occasioned by the negligence or misfeasance of its agents except where it has, by legislative enactment, assumed such liability.

Such a liability, however, has been assumed by the act of 1870 (Chap. 321, Laws of 1870), authorizing the hearing and determination of claims for damages resulting from the negligence or conduct of any officer having charge of the canals, where "the facts proved would establish a legal liability against an individual or corporation" for similar injuries.

In case such negligence causes the death of a person, his personal representatives are entitled to an allowance of a claim for damages, in a case

where, if the neglect or default had been that of a private person or a corporation, an action by said representatives would have been maintainable against such person or corporation.

To establish such a cause of action it must appear that defendant owed some duty to the plaintiff which he or it has failed to discharge, and that the neglect was the cause of the injury.

The owner of premises owes no duty of active diligence to one going thereon, either with or without license or permission and merely for his own convenience, and is not liable for injuries resulting from an omission to keep a structure thereon in proper repair.

The tow-path to a side-cut, leading from the Erie canal to the Hudson river, was carried over a channel leading from the side-cut to a basin by means of a swing-bridge. The tow-path and bridge were entirely upon state lands and formed no part of any public highway; they were intended for use solely in connection with the navigation of the canal. A ferry company had for some years run ferry boats across the river, using, without authority from the state, a landing on the state lands near the bridge, and persons going to and coming from this ferry were accustomed to cross over the bridge. Plaintiff's intestate in attempting to cross the bridge to go to the ferry in the evening, fell from the abutment into the channel and was drowned. On a hearing before the Board of Claims of a claim for damages because of the death, it appeared that the bridge had been pushed out of its place about two-thirds of its width by a passing canal boat, leaving about four feet in width of the bridge connected with the tow-path. It also appeared that the state had formerly been accustomed to fasten the bridge at night with a chain and pin, but the chain having been broken had not been used for over a year, and from six P. M. until six A. M. there was no state employe in attendance at the bridge; also, that it was quite common to have it opened by the pressure of passing boats, and when this occurred in the night-time there was no one whose duty it was to replace it. *Held,* that the state owed no duty to the public, at least except to those navigating the canal, to keep the bridge in repair, and was not chargeable with negligence in omitting to keep it securely fastened.

It appeared that the accident happened about seven P. M.; the night was dark, but there was a lighted lamp on the bridge and five or six others within a short distance. The deceased was with a companion with whom he had been drinking at a saloon; they both were old residents in the vicinity and had frequently crossed this bridge to and from the ferry. The bridge was frequently open at all times of day and night. *Held,* that the deceased was properly charged with contributory negligence.

A person familiar with the situation, who deliberately attempts to cross in the night-time a swing-bridge, over a dangerous stream, which is frequently open, without observing whether it is open or not, is fairly chargeable with negligence.

(Argued December 21, 1887; decided January 17, 1888.)

APPEAL from decision of the Board of Claims, made March 9, 1887, dismissing a claim by appellant for damages for the death of her intestate William H. Splittorf, alleged to have been caused by the negligence of the officers of the state having charge of its canals, in failing to properly close and secure a swing-bridge on its lands.

The material facts are stated in the opinion.

*James Lansing* for appellant. The claim herein is cognizable by the Board of Claims. (*Sipple* v. *The State*, 99 N. Y. 284.) Such cause of action against the state survives the death of the injured party. (Laws of 1847, chap. 450 as amended by Code of Civ. Pro., § 102 ; Williams on Executors [8 Eng. ed.] 796 ; *Pulver* v. *Harris*, 52 N. Y. 76.) The state was guilty of actionable negligence toward claimant's intestate. (*Corby* v. *Hill*, 4 C. B. [N. S.] 556 ; *Hounsel* v. *Smith*, 7 id. 730 ; *Smith* v. *London Dock Co.*, L. R., 3 C. P. 476 ; *Indermaur* v. *Dammes*, 2 id. 311 ; *Barnes* v. *Ward*, 67 E. C. L. 392, 403 ; *Holmes* v. *N. E. R. R. Co.* 4 Exch. 254 ; *Beck* v. *Carter*, 68 N. Y. 292 ; *Crogan* v. *Scheele*, 33 A. L. Jour. 110 ; *B. & O. R. R. Co.* v. *Rose* [Md. Ct. App.] 34 id. 82 ; *Balch* v. *Smith*, 7 Hurlst. & Norm. 740 ; *Scott* v. *London Dock Co.*, 3 L. Times [N. S.] 383.) Knowledge of the causes which produce inevitable results is the knowledge of the results. (*Darling* v. *Mayor*, etc., 18 Hun, 340.) But if it shall be assumed that the claimant's intestate occupied the position of a bare licensee upon the premises of the defendant the state was liable for his injury. (*Barry* v. *N. Y. C. & H. R. R. R. Co.*, 92 N. Y. 289 ; *Byrne* v. *N. Y. C. & H. R. R. R. Co.*, 104 id. 362 ; *Hounsel* v. *Smith, supra* ; *Southcote* v. *Stanley*, 1 H. &. N. 247 ; *Seymour* v. *Maddox*, 16 Q. B. 326 ; *White* v. *France*, L. R. 2 C. P. D. 308 ; *Pickard* v. *Smith*, 10 C. B. [N. S.] 470 ; *Corby* v. *Hill*, *supra* ; *Corogan* v. *Union Sugar Refinery*, 98 Mass. 577.) A person has a right to assume that all parts of a street or way are reasonably safe, and that he may cross at any point that suits his convenience without being liable to the imputation

of negligence. (*Brusso* v. *City of Buffalo*, 90 N. Y. 699.) It cannot be considered to be contributory negligence if the plaintiff has merely not anticipated the defendant's negligence, for the plaintiff has a right to presume that the defendant is going to act with ordinary care until he has some notice to the contrary. (Smith on Negligence, m. p. 235 ; *Vennal* v. *Garner*, 1 Cr. & M. 21 ; *Gee* v. *Met. Ry. Co.*, L. R., 82 Q. B. 61 ; *Johnson* v. *Hudson River R. R. Co.*, 20 N. Y. 65.)

*Charles F. Tabor* for respondent.   There was no negligence upon the part of the state. (*Mayor, etc.*, v. *R. R. Co.*, 2 Keyes, 478; *Weed* v. *Village of Ballston Spa*, 76 N. Y. 336; *Houghkirk* v. *Pres't, etc.*, 92 id. 227 ; *Hart* v. *Hudson River Bridge Co.*, 84 id. 62.)   As bearing upon the question of defendant's negligence, the deceased had no business on the bridge at all. (*Burbank* v. *Fay*, 65 N. Y. 57; *Nicholson* v. *Erie R. Co.*, 41 id. 525 ; *Hounsel* v. *Smith*, 97 Eng. C. L. 729 ; *Beck* v. *Carter*, 68 N. Y. 292; *Murphy* v. *City of Brooklyn*, 98 id. 642 ; *Sutton* v. *N. Y. C. & H. R. R. R. Co.*, 66 id. 248.) There was neither allurement, enticement nor invitation upon the part of the state, alleged in the claim or proved on the trial, to the intestate or others to make this bridge a highway. (*Conorose* v. *Walker*, 30 Hun, 600 ; *Lawrence* v. *Crown Point Iron Co.*, 101 N. Y. 391; *Pittsburgh R. R. Co.* v. *Brigham*, 29 Ohio St. 364; *Parker* v. *Portland Publishing Co.*, 69 Me. 173 ; *Cahill* v. *Layton*, 57 Wis, 600 ; *Hargreave* v. *Deacon*, 25 Mich. 11; *Murphy* v. *City of Brooklyn*, 98 N. Y. 642; *Victory* v. *Baker*, 67 id. 366.)   The burden of proof was upon the claimant to show the absence of contributory negligence. (*Hubbell* v. *City of Yonkers*, 104 N.Y. 434 ; *Reynolds* v. *N. Y. C. & H. R. R. R. Co.*, 58 id. 248 ; *Hale* v. *Smith*, 78 id. 483 ; *Cahill* v. *Hilton*, 27 N. Y. Weekly Dig. 235 ; *Hays* v. *Forty-second St. R. R. Co.*, 97 id. 259 ; *Cordell* v. *N. Y. C. & H. R. R. R. Co.*, 75 id. 330 ; *Becht* v. *Corbin*, 92 id. 658 ; *Monk* v. *Town of New Utrecht*, 104 id. 561.)   The proofs in this case all tend to show that the deceased must have been familiar with this bridge and its surroundings.

The burden was upon the claimant to show, either by direct evidence or the drift of surrounding circumstances, that he approached it with due care and caution. (*Tallman* v. *Syracuse B. & N. R. R. Co.*, 98 N. Y. 202; *Du Bois* v. *City of Kingston*, 102 id. 223.) The fact that the state, on the day following the accident, replaced the iron pin or bar which had been previously broken, as found by the board of claims, does not establish negligence, and the evidence given to establish such replacement was not competent or proper upon any question of negligence. (*Morell* v. *Peck*, 88 N. Y. 398.) The cause of action did not survive the death of claimant as against the state, and, therefore, a recovery cannot be had. (*Green* v. *H. R. R. R. Co.*, 2 Keyes, 294; *DeBevoise* v. *N. Y., L. E. & W. R. R. Co.*, 98 N. Y. 377; *Lewis* v. *State*, 96 id. 71.) In the construction of statutes declaring or effecting rights of interests, they should not be interpreted so as to embrace the sovereign power unless that idea be distinctly expressed or result by necessary implication. (Sedgwick on Construction of Statutory and Constitutional Power 337; *Joslyn* v. *Sloan*, 28 Miss.753; *King* v. *Allen*, 15 East, 333; *U. S.* v. *Green*, 4 Mason, 427; *U. S.* v. *Thompson*, 19 Alb. Law Jour. 174; *People* v. *Gilbert*, 18 Johns. 227; *People* v. *Rossiter*, 4 Cow. 148; *City of Rochester* v. *Town of Rush*, 80 N. Y. 272; *Savings Bank* v. *U. S.*, 19 Wall. 239.)

RUGER, Ch. J. The plaintiff's intestate was drowned at West Troy, by walking off the tow-path of a side-cut running to the Hudson river, from the Erie canal, and falling into a channel connecting the canal with the Mohawk basin, an adjunct thereof. At the place of the accident the tow-paths on either side of the channel were connected with each other by a swing-bridge, built by the state for the purpose of affording a safe passage over the channel for teams and horses, employes, drivers and persons having occasion to use it in the prosecution of the business of navigating the canal. This bridge was very frequently required to be swung open to afford passage

to and from the basin by boats, scows and other craft, and the time consumed in such passages varied from five minutes to half an hour. The tow-paths and the bridge were built entirely upon the land of the state, and formed no part of any public street or highway. The title to such land was acquired by the state for the purpose of being used in connection with the navigation of the canals and for no other purpose whatever. A public street, known as Union street, in the village of West Troy, ran along by the side of the tow-path and terminated near the bridge or basin. No public highway existed on the other side, between the channel and the Hudson river. The bridge was a wooden structure about sixty feet long and sixteen wide, with a narrow walk and railing extending along the north side next to the basin, and was operated by hand-power with a lever, which was moved by one person with great difficulty. It was situated about one hundred feet east of the lock connecting the river with the side-cut and afforded a passage-way for employes at the lock to and from West Troy. A ferry company had for some years run ferry-boats across the Hudson river between West Troy and the city of Troy, and used a landing on the premises of the state in West Troy some five hundred feet to the west of the bridge described. It did not appear that it had ever received permission from the state to so use its lands. Persons using this ferry from the northern part of West Troy had for some years been accustomed to pass over the bridge, when it was in position, in going to and coming from the ferry, and it did not appear that they had ever been obstructed by the state in so doing, except that in the years 1878 and 1879 a line of posts and chains had been erected by the state separating Union street from the tow-path, and running down near the bridge in such a manner as effectually to prevent teams from passing from the street upon the bridge. This obstruction was, after it had existed two or three years, substantially broken down and destroyed by strangers, and after that time teams as well as foot-passengers were accustomed to pass over the bridge

the accident the ferry company constructed an elevated foot-bridge over this channel for the accommodation of persons using the ferry. It had also constructed a plank-sidewalk running from the ferry landing on the west, to the foot-bridge over the channel.

The evidence tended to show that on the night of the accident, the tow path bridge had been pushed out of its place about two-thirds of its width by the pressure of a passing canal boat which had been thrown against it, by the force of the current running from the canal into the basin. This left only about four feet in width of the bridge connected with the tow-path, affording a passage way across the channel. On the evening of October 11, 1885, at about half-past seven o'clock the intestate, with a companion, left a saloon in West Troy, where they had been drinking together, for the purpose of taking the ferry for Troy. They proceeded down Union street, side by side, until they reached the bridge when one of them passed safely upon it, but the other walked from the abutment into the channel and was drowned. Although the night was described as being quite dark, the evidence tended to show that there was a lighted kerosene lamp on the bridge and five or six other lighted lamps, both gas and kerosene, within from fifty to one hundred and fifty feet from the bridge. It appeared that both the deceased and his companion had been old residents of Troy, had frequently crossed this bridge and were acquainted with the ferry and its approaches. The evidence also tended to show that at one time the state was accustomed to fasten this bridge at night with a chain and pin which had become broken, and for over a year such fastening had not been in use. A person was employed by the state to tend the bridge during the day, but it was his custom to leave work every night at six o'clock, and from that time until morning no one had ever been in attendance at the bridge. It was also shown that the bridge was not only frequently open to permit the passage of boats through the channel, but that it was quite common to have it opened by the pressure of boats drawn into the channel by the current running in that

direction, or from other causes. When this occurred in the night time there was no one employed or who assumed to perform the duty of swinging the bridge back to its place. The plaintiff claims that the state having for a long time permitted the public, without objection, to use the bridge in going to and from the ferry, was guilty of negligence in not securing the bridge at night, so that it could not be displaced by passing boats or by other causes. The board of claims dismissed the claim for damages upon findings of fact holding, first, that the deceased was guilty of contributory negligence in producing the accident, and, second, that the state owed no duty to the public to keep the bridge in repair, and that it was not guilty of negligence in omitting to keep it securely fastened during the night. As we have no power to review a finding of fact made by the board of claims, it follows that if there is any evidence to support either of the findings, we must affirm the award appealed from. (§ 10, chap. 205, Laws of 1883.)

It is well settled that no action or claim on behalf of a citizen can be maintained against the state for injuries occasioned by the negligence or misfeasance of its agents except where it has by voluntary legislative enactment assumed such liability. (*Lewis* v. *The State*, 96 N. Y. 71.)

It is claimed by the appellant that such liability has been assumed by the state by virtue of chapter 321 of the Laws of 1870, and we are of the opinion that the claim is well founded. (*Sipple* v. *The State*, 99 N. Y. 284.) By that act claims against the state for injuries received by any person or corporation for damages alleged to have been sustained by them from the canals of the state, or from their use and management, or arising or resulting from the negligence or conduct of any officer of the state having charge thereof, are authorized to be heard and determined by the board of canal appraisers, but no award shall be made unless the facts proved would establish a legal liability against an individual or corporation in a court of justice.

The plain implication from this language, is that it was

intended to give the same remedy against the state for the injuries referred to which then existed against individuals and corporations for similar injuries. The jurisdiction given in the law of 1870 to the canal appraisers, was afterwards transferred to the Board of Claims, and is now exercised by it. In order therefore, to see what claims are authorized to be made against the state by this statute, it is necessary to refer to the cases authorizing similar actions against individuals and corporations. Since 1847 it has been substantially provided that the executor or administrator of a decedent, who has left him or her surviving a husband, wife or next of kin, may maintain an action to recover damages for a wrongful act, neglect or default by which the decedent's death was caused, against a natural person or corporation which would have been liable to an action in favor of the decedent by reason thereof, if death had not ensued. (Chap. 450, Laws of 1847, § 1902, Code of Civil Procedure.) The cause of action here referred to, is one which did not exist previous to the act of 1847 (chap. 450), and is given directly, in the cases specified, to an executor or administrator.

This cause of action is not derivative therefore but accrues directly to the executor or administrator, and no question as to its survivorship arises. The question in the case, therefore, is whether the facts proved would create a cause of action against a natural person or corporation. It is essential to the maintenance of such a cause of action, that it should appear that the plaintiff should show his intestate free from negligence and that the defendant owed some duty to the intestate which it has omitted to discharge and which was the cause of the injury.

In *Nicholson* v. *Erie Railway Company* (41 N. Y. 529) it was said that " negligence consists in the commission of some lawful act in a careless manner, or in the omission to perform some legal duty to the injury of another. It is essential in the latter case to establish that the defendant owed at that time some specific, clear legal duty to the plaintiff or the party injured. The remarks of Judge EARL in the same case are

quite pertinent to the question here. He says, " it cannot be doubted from the evidence that he (the deceased) had an implied license to cross at that point, and hence that he was lawfully there. He was not there by invitation of the defendant nor in the business of the defendant, but for his own purpose on his way home. While he was lawfully there he had no right, as against the defendant, to be there. It could at any time have revoked the license and then he could not have crossed at that point without being a trespasser. The cars were lawfully upon the branch track and the defendant had the right to have them there. The defendant owed the intestate no active duty. It owed him no duty, whatever, except such as every citizen owes another. It had no right intentionally to injure him and would be liable if it needlessly or carelessly injured him while performing its own business. It owed him a duty to abstain from injuring him either intentionally or carelessly, but it did not owe him the duty of active vigilance to see that he was not injured while upon its land merely by permission for his own convenience." The learned judge refers to and comments upon the cases of *Gautret* v. *Egerton*, L. R. (2 C. P. 370) ; *Southcote* v. *Stanley* (1 Hurl. & N. 246) ; *Hounsell* v. *Smith* (97 Eng. C. L. 729) ; and *Smith* v. *L. & St. K. Dock Company* (3 L. R. C. P. 326), which are particularly applicable to the question under discussion here. It was said by Judge ANDREWS in *Larmore* v. *Crown Point Iron Company* (101 N. Y. 394), that "there is no negligence in a legal sense which can give a right of action unless there is a violation of a legal duty to exercise care. The duty may exist as to some persons and not as to others, depending upon peculiar relations and circumstances."

The circumstances of this case relieve the state from any claim that the injury proceeded from any act of commission on its part, or that of any of its agents, or from the charge of malfeasance in the erection of a structure, dangerous in itself, which, from its operation or use, might give rise to reasonable apprehension of danger to bystanders or travelers. The state had erected a bridge which was sufficient and safe, so far as

appears, for the purposes for which it was intended. It had upon this occasion left it at the close of the day in the situation in which it had been usual and customary to leave it, and it had been displaced, leaving the situation dangerous to careless and inattentive persons by the wrongful act of a stranger. We can see in this no violation of duty on the part of the state. It owed no duty to the public to build this bridge, to keep it in repair, or to rebuild it in the event of its destruction. It could keep it up or let it decay at its own pleasure, and it made itself liable to no one in either event, except, perhaps, to persons navigating its canals by invitation.

The whole claim of the appellant rests upon the assumption that the state owed a duty to all persons using its tow-path for their own purposes, whether with or without license or permission, to keep it in such repair as to make passage over it safe and secure at all times both day and night. We do not think that such a claim is tenable. The state had simply built a tow-path and bridge upon its own land for the use of persons navigating its canals. It had raised no structure which was not necessary for this purpose, and the purpose of the bridge was obvious, from its location and connection with the tow-path, to all persons who came in its vicinity. No enticement or allurement to people generally to pass over the bridge was held out, except such as any bridge upon private lands holds out, and no one had a right to suppose from the mere existence of a tow-path bridge, that the state undertook the duty of keeping it in place at all times for the use of the general public. Indeed the statutes of the state make it a misdemeanor for citizens, other than those navigating the canals, to use its tow-path for the passage over them of horses, cattle or other live animals (1 R. S. [7th ed.] 697, § 181), and every citizen had notice that the state was jealous of the use of its canal property except for the purposes of canal navigation.

What obligations the ferry company assumed by building its ferry house on state lands and the sidewalk from it to the bridge over the channel, it is unnecessary to discuss, but it is quite certain that it did not thereby impose any duty on the

state towards the public, using such ferry to facilitate or render safe the passage to it.

The consideration of this branch of the case may be concluded by an extract from the opinion of Judge ANDREWS in *Larmore* v. *Crown Point Iron Company* (*supra*), which is directly in point upon the question involved here: "The duty of keeping premises in a safe condition, even as against a mere licensee, may also arise where affirmative negligence in the management of the property or business of the owner would be likely to subject persons exercising the privilege theretofore permitted and enjoyed to great danger. The case of running a locomotive, without warning, over a path across the railroad which had been generally used by the public without objection, furnishes an example. (*Berry* v. *N. Y. C. and H. R. R. R. Co.* 92 N. Y. 289; *Beck* v. *Carter*, 68 id. 283.) The cases referred to proceed upon definite and intelligible grounds, the justice of which cannot reasonably be controverted. But in the case before us there were no circumstances creating a duty on the part of the defendant to the plaintiff to keep the whimsey in repair, and consequently no obligation to remunerate the latter for his injury. The machine was not intrinsically dangerous; the plaintiff was a mere licensee; the negligence, if any, was passive and not active, of omission and not of commission."

We are also of the opinion that the evidence did not show that the decedent was free from the imputation of contributory negligence. The burden of proof upon this question rests primarily upon the party injured, and it is a part of the claimant's case to show affirmatively that his own carelessness did not contribute to the injury. We cannot see anything in the evidence to show that the decedent exercised the least care or precaution in attempting to cross the bridge; on the contrary the circumstances tend to show that he was heedless and inattentive to a culpable degree. A person, being familiar with the situation, who deliberately attempts to cross a swing-bridge over a dangerous stream in the night time without observing whether it is open or not, seems to us to be fairly

chargeable with negligence. The obvious purpose of this bridge was that it should be open at irregular intervals and for indefinite periods. The evidence showed that it was frequently open from various causes and at all times of day and night. The decedent had at several times used the bridge previous to this occasion and knew its location, structure and purposes. He had no right, on a dark night, to attempt to cross it on an erroneous assumption that it was in a position to be crossed safely. No signal was ever employed to notify the public of its existing position and travelers had always been required to use their own observation to determine whether it was open or shut. It is quite probable from the evidence, that there was sufficient light in the vicinity to disclose its actual situation if there had been any attempt to discover it, and the inference is irresistible that the decedent walked off the abutment without the slightest effort to see whether the bridge was in position or not. We think the evidence tended to support the charge of contributory negligence.

We are, therefore, of the opinion that the findings of the Board of Claims were sustainable upon both of the grounds, and that the award should be affirmed, with costs.

All concur.

Award affirmed.