JAMES WALSH, INFANT, BY SARAH WALSH, HIS GUARDIAN AD LITEM, APPELLANT, *v.* THE FITCHBURG RAILROAD COMPANY, RESPONDENT.

*Negligence — child injured while playing on a turntable — liability of the railroad company.*

A railroad company maintained on its own premises a turntable, suitable for the purposes for which it was constructed, but which was liable to inflict injury when in motion, was easily movable, and had no appliance to keep it stationary when not in use, or to stop it.

The premises were open to the public and used as a thoroughfare, and frequented by children from the vicinity, who had played with and upon the turntable from time to time, some turning it and others riding upon it.

A child, about five years and nine months old, while playing and riding upon the turntable with other children, one of whom, a lad about fifteen years old, was turning it, was injured by his leg catching between the revolving turntable and the rail of the road-bed, and brought an action against the railroad company for damages on the ground of negligence.

*Held,* that a case for the jury was presented, it being for the jury to say whether, under all the circumstances, the defendant had invited, allured or enticed the plaintiff upon its premises or to play with the turntable, and, if it had, whether the turntable was left in such a condition as to charge the defendant with any resulting injury. (PUTNAM, J., dissenting.)

APPEAL by the plaintiff, James Walsh, an infant, from a judgment of the Supreme Court, entered in the office of the clerk of Rensselaer county on the 2d day of June, 1890, in favor of the defendant, on the dismissal of the complaint, by direction of

the court at the Rensselaer Circuit, in an action brought to recover damages for a personal injury alleged to have been caused through the defendant's alleged negligence in leaving a turntable unguarded.

*Henry T. Nason*, for the appellant.

*T. F. Hamilton*, for the respondent.

HERRICK, J.:

The defendant, for the purpose of turning its engines around, constructed a turntable upon a large vacant piece of property belonging to it, a block of ground surrounded by streets; one side of the lot within which the turntable was located was open and unfenced for a distance of over 500 feet; the other sides were fenced or partially so, but the fences had openings in them through which people could pass and repass, and people had, for somtime prior to the accident in question, been accustomed to go through the premises, using it as a short cut from one street to another; it was a place also frequented by children, and to a considerable extent overgrown with grass and weeds.

The turntable was a suitable one for the purpose for which it was constructed, but had no lock, catch, bolt, bar, fastening or appliance to hold it fast when not in use, or to stop it when in motion, or to prevent strangers from using it. It moved easily. Children from the vicinity had played with it and upon it from time to time before the occurrence of the accident, which is the foundation of this action, some turning it, others riding upon it.

The flagman's house was in sight of the turntable; it could be seen by the flagman and other employees of the defendant. The plaintiff resided in a house about 300 feet distant from the turntable.

The plaintiff, a boy about five years and nine months old, was, at the time of the accident, playing with and upon the table in company with several other children; one, a lad, about fifteen years of age, was turning the table; some other boys were upon the table riding, among them the plaintiff. It seems that, by the revolving of the turntable, the plaintiff's leg was caught between the fixed rail of the road-bed and the rail upon the turntable, and the flesh badly mangled and torn. I think the case should have been submitted to the jury.

In an action for an injury founded upon negligence, contributory personal negligence cannot be attributed to a child of very tender years; there must also be concurring negligence on the part of the parents or guardians; and it is not *per se* negligence to allow children to play in the street; it may or may not be negligence, depending upon circumstances. It is for the jury to determine. (*Kunz* v. *City of Troy*, 104 N. Y., 344.)

As to the liability of the defendant, it appears to me that the case of *Lynch* v. *Nurdin* (1 Adol. & Ellis [N. S.], 29) is, in principle, applicable to this case, although there are some points of difference. In that case, the defendant's servant left his horse and cart in the open street at the door of a house, within which the servant remained for about half an hour. After the servant had been in the house about a quarter of an hour, the plaintiff, a child between six and seven years of age, with several other children, came along and began to play with the horse, and to climb into the cart and out of it; while the plaintiff was getting down from the cart another boy made the horse move, in consequence of which the plaintiff fell from the cart, one of its wheels passing over his leg, and he was seriously injured.

The court, in that case, among other things, said: "It is urged that the mischief was not produced by the mere negligence of the servant, as asserted in the declaration, but, at most, by that negligence, in combination with two other active causes — the advance of the horse in consequence of his being excited by the other boy, and the plaintiff's improper conduct in mounting the cart, and so committing a trespass on the defendant's chattel. On the former of these two causes no great stress was laid, and I do not apprehend that it can be necessary to dwell at any length. For if I am guilty of negligence in leaving anything dangerous in a place where I know it to be extremely probable that some other person will unjustifiably set it in motion to the injury of a third, and if that injury should be so brought about, I presume that the sufferer might have redress by action against both or either of the two, but unquestionably against the first."

The court, in discussing the distinction between the willful act done by a person who deliberately plants a dangerous weapon in his grounds with the design of deterring trespassers, and the mere

negligence of a servant in leaving his cart in the open street, says : " But, between willful mischief and gross negligence, the boundary line is hard to trace; I should rather say impossible. The law runs them into each other, considering such a degree of negligence as some proof of malice. It is, then, a matter strictly within the province of a jury deciding on the circumstances of each case."

" They would naturally inquire whether the horse was vicious or steady, whether the occasion required the servant to be so long absent from his charge, and whether, in that case, no assistance could have been procured to watch the horse, whether the street was, at that hour, likely to be clear or thronged with a noisy multitude; (b) especially, whether large parties of young children might be reasonably expected to resort to the spot. If this last-mentioned fact were probable, it would be hard to say that a case of gross negligence was not fully established."

So far as I know the principle of that case has never been overruled. While in the case referred to the cart was left in the public street, and in the case at bar the turntable was upon the private property of the defendant, yet, the defendant had permitted the public to use it as a thoroughfare, people passed and repassed through it; teams went upon it; children played in it. In *Barry* v. *New York Central and Hudson River Railroad Company* (92 N. Y., 289), where the public had for a long time been in the habit of crossing the tracks of the defendant to reach points beyond such tracks the court said : " There can be no doubt that the acquiescence of the defendant for so long a time in the crossing of the tracks by pedestrians amounted to a license and permission by the defendant to all persons to cross the tracks at this point. These circumstances imposed a duty upon the defendant in respect to persons using the crossing, to exercise reasonable care in the movement of its trains.

The mere fact that the turntable was on private property does not, it seems to me, determine the question. Private property may be so situated as to invite people upon it; it may have that in or upon it that will allure or entice people to enter it, and if so, the owner must see to it that by no negligence of his are the people he invites or entices upon his premises, injured.

I think there are no cases where the owner of property has placed

it so as to invite or entice people to enter or use it, and has not been held liable for injuries resulting from a want of care on his part in the management, control or efficient guarding of anything thereon calculated to produce injury.

*McAlpin* v. *Powell* (70 N. Y., 126) was a case where a child went out of a window upon the platform of a fire-escape, and the trap-door in the platform being insecurely fastened, gave way, the child was precipitated below and killed.

The court said the deceased had no right to go upon the platform and was there for no legitimate purpose. The proof showed that children were not accustomed to go there. It bore no indication that it was designed for general use, and furnished no invitation or attraction to young children any more than the roof of a stoop or piazza, which projects under the window of a dwelling-house, and is easy of access to persons in the vicinity.

The court speaking of the case of *Lynch* v. *Nurdin*, says: "But there is a clear distinction between such a case where the infant was lawfully in the highway which it has the right to travel and use, and when the blameable carelessness of the defendant tempted the child to amuse himself with an empty cart and a deserted horse, and a case where he is palpably invading the premises of another and is a mere trespasser.

The case of *Larmore* v. *Crown Point Iron Company* (101 N.Y., 391) turned upon the principle that a person owes no legal duty to one who comes upon his premises without authority or invitation which required him to keep machinery in repair.

*Miller* v. *Woodhead* (104 N. Y., 471), where a child, who was with its mother visiting at the time, crawled out of a window and fell through a skylight and was injured. The court said the roof or skylight was not a dangerous structure, and the defendant had given no invitation and issued no license, express or implied, to the plaintiff to go upon the roof.

In *Splittorf* v. *State* (108 N. Y., 205) the State had erected a bridge upon its own lands for the use of persons navigating the canal. It was not dangerous in itself. It was sufficient and safe for the purpose for which it was intended. No enticement or allurement to people generally to pass over the bridge was held out. The statute made it a misdemeanor for citizens not navigating the

canal to use the bridge. In all these cases it will be observed that the question of invitation, enticement or allurement was absent.

The question of how one can use his own property, what he can place upon it, and whether adequate precautions have been taken to protect people from injury always depends upon circumstances; what may be lawful, what may be safe, what may be adequate care in one case may not be in another.

In this case, while the turntable was on the defendant's own land, yet it allowed the public to use that land for many of the purposes of a highway; while situated in a populated neighborhood it was, so far as ease of access was concerned, substantially uninclosed; it was, to an extent, overgrown with grass and weeds, a place where children of the neighborhood might naturally go for amusement; the turntable was easily handled, and, as demonstrated by this case and others, was, when in motion, liable to inflict injury; children came there from time to time to play with it; under such circumstances, it seems to me, that it was a question for the jury to say whether, under all the circumstances, the defendant had invited, allured or enticed the plaintiff upon its premises, or to play with the turntable, and if it had, whether such turntable was left in such a condition as to charge it with any resulting injury.

For these reasons the judgment should be reversed and a new trial granted, costs to abide event.

MAYHAM, P. J., concurred in the result.

PUTNAM, J. (dissenting):

I am inclined to concur in the views advanced by Justice FURSMAN in granting defendant's motion for a nonsuit, believing that those views are sustained by the authorities cited by him. (See, also, *Nicholson* v. *The Erie Railway Co.*, 41 N. Y., 525.)

In the latter case, a party on defendant's premises, by its license, was injured by cars not properly secured, being started by a heavy wind, and running over him.

In the opinion of Chief Justice EARL (pages 532, 533), occurs the following language: "The cars were lawfully upon the branch track, and the defendant had the right to have them there. The defendant owed the intestate no active duty. It owed him no duty what-

ever, except such as every citizen owes another. It had no right intentionally to injure him, and would be liable if it heedlessly or carelessly injured him while performing its own business. It owed him a duty to abstain from injuring him, either intentionally or carelessly, but it did not owe him the duty of active vigilance to see that he was not injured while upon its land merely by permission for his own convenience. If the point where the intestate was killed had been a public highway, * * * or if, in any other way, he had been not only lawfully, but in the exercise of a right at that point, the defendant would have owed him a duty to see that the cars upon the branch track were properly secured, but as it was, they owed him no duty and cannot be charged as to him, with negligence in not blocking or fastening the cars."

The above quotation shows, I think, the distinction between the case under consideration and that of *Barry* v. *The New York Central and Hudson River Railroad Company* (92 N. Y., 289), referred to in Justice HERRICK's opinion, where deceased was injured by *active negligence* on the part of the defendant, and between this case and that of *Lynch* v. *Nurdin* (1 Adol. & Ellis [N. S.], 28–30). In the latter case, the negligent act was committed by the defendant on the highway, the plaintiff, at the time of the injury, being where he had a right to be on a public street. Here, the plaintiff was injured where he had no right to be, on defendant's premises. He was there merely by its license. The defendant could not injure him by a *careless act*, although on its premises without right, but owed him no active duty. I think, as to plaintiff, it was not bound to lock up its turntable.

I am, therefore, unable to concur in the views stated in Judge HERRICK's opinion.

Judgment reversed, new trial ordered, costs to abide event.