HENRY HENKE

*v.*

STATE OF ILLINOIS.

*Opinion filed September 28, 1906.*

1. NON-LIABILITY OF STATE—*what does not constitute claim against the State.* The basis of this claim, as submitted and contended for by claimant is, that the Lincoln Park Board, through its employees, was guilty of negligence in not providing claimant, a painter, with reasonably safe appliances to work upon, and in not inspecting and testing such appliances; that the members of such board were officers and agents of the State, and that the State is therefore liable. *Held,* that no liability attached.

2. JURISDICTION—*class of claims Court may pass upon.* Claimant cites sec. 3 of the Act of 1903, which provides that, "and it shall be the duty of said Court to hear and determine * * * all other unadjusted claims of whatsoever nature or character against the State of Illinois," as showing that the Court of Claims has jurisdiction to allow claims of this class.

3. SAME—*creation of Commission and Court did not increase State's liability.* In the establishment of the Commission of Claims and the present Court of Claims, it was not the intention of the legislature to create a new class of claims against the State, but it was to provide a tribunal in which claims against the State, which civilized governments have always recognized, might be determined.

4. AWARD—*what must be shown to justify.* In order to justify the allowance of a claim, the facts must show either a legal or equitable claim against the State.

5. RESPONDEAT SUPERIOR—*doctrine of not applicable to the State.* The State is not responsible for the misfeasance, wrongs, negligence or omissions of duty of its officers, agents or servants, for it does not guarantee to any person the fidelity of the officers or agents, whom it employs.

Walter F. Heineman, for Claimant.
W. H. Stead, Attorney General, for State.

This is a claim for personal injuries received by Henry Henke as a result of the breaking of a scaffold, while claimant was employed as a painter at Lincoln Park, Chicago, Illinois.

Claimant was employed by the Lincoln Park Board, September 21, 1901, and worked as a painter for the said board continuously up until the date of the said accident, September 29, 1902.

The evidence shows that on the day of the injury, claimant was working on a scaffold, painting the ribs of the large palm house; that the scaffold upon which he was working had been erected by carpenters likewise employed by the park board; that claimant had nothing whatever to do with the erection of the scaffold; that about noon, while claimant was performing his duties, he walked upon a plank placed in the scaffold, which suddenly broke about the middle and precipitated him to the ground; that the plank, which broke under him, was found after the accident to have had a knot or cross-grain running through it at the place where the break occurred; that this knot was on the under side of the plank and that the plank was painted gray, so that the defect could not be seen by claimant; and that as a result of the said accident the arches of both of claimant's feet were permanently destroyed in addition to temporary injuries of a painful character. To recover damages for these injuries, this claim has been filed against the State.

It is contended by claimant that the park board, through its employees, were guilty of negligence in not providing reasonably safe appliances for claimant to work upon and in not inspecting the appliances used by claimant or subjecting them to proper tests, and that as said board were officers and agents of the State, the State is therefore liable.

It is also further contended in this case that under the various Acts establishing the now Court of Claims of this State, jurisdiction has been given this Court to allow claims of this nature and thus hold the State liable for the negligence, misfeasance and laches of its officers and agents, the Lincoln Park Board and its employees. And this it is claimed, is given under section three of the Act of 1903, which recites that "it

shall be the duty of said Court to hear and determine, * * * all other unadjusted claims of whatsoever nature or character against the State of Illinois."

Prior to 1877 there was no forum or tribunal in this State wherein claims could be filed against the State of Illinois. By the Act of 1877, first creating the Commission of Claims, to be composed of one Judge of the Supreme Court and two circuit judges of the State, it was declared to be the duty of the Commission "to hear and determine all unadjusted claims of all persons against the State of Illinois." During the existence of the Commission under this Act no claim for personal injuries seems to have been filed against the State.

In 1889 the legislature revised the Commission of Claims Act, changing the manner in which the Commission should be constituted, and specifically setting forth its jurisdiction. The clause referred to in section three by claimant as to "all other unadjusted claims" first appeared in this Act.

The same year this Act went into force, the Commission early passed upon the question here involved and the opinion then rendered has been an established principle, closely followed by this Court, ever since in the adjudication of similar cases.

It was then held (*Schmidt* v. *State,* 1 Court of Claims Rep., 76, 79) that "the law creating this Commission does not undertake to create a new liability against the State, but provides a method by which claims against the State may be heard before this Commission." And again on page 80, "It is our understanding that, * * * this Commission has no power to make an award in any case unless the facts show a legal or equitable claim against the State."

In so doing the Commission seemed to follow the opinion of the Massachusetts Court filed the same year, in *Murdock Grate Co.* v. *Commonwealth,* 24 N. E., 854, where the Court, in passing upon a similar statute in that State succinctly says: "The Act we are discussing discloses no intention to create against the State

a new and heretofore unrecognized class of liabilities, but only an intention to provide a judicial tribunal where well recognized existing liabilities can be adjudicated."

The Act of 1903, creating the Court of Claims, successor to the Commission of Claims, re-enacts the section referred to, and, since the passage of the Act of 1903, this Court has still uniformly held to the doctrine that in the establishment of this tribunal it was not the intention to create a new class of claims against the State, but to provide a tribunal to determine those claims against the State which civilized governments have always recognized.

It is therefore to be considered whether a claim for an injury done by or the result of the negligence of an officer or agent of the State, is one for which a liability exists against the State, even if there did not exist this tribunal to pass upon it.

In the case of *Murdock Grate Company* v. *Commonwealth,* above cited, the Court say (page 855):

"States have always found it necessary to take and use the property of their citizens for the purposes of their government. They have assumed various responsibilities on behalf of their citizens or others. They have also always been parties to contracts for the borrowing of money, the purchase of property, the employment of labor. And the duties arising from such acts have always been fully recognized, even if judicial tribunals have not always been provided, to make proper compensation for, or adjustment or payment of the demands arising from such acts. But we do not find that demands founded on the neglect or torts of ministerial officers engaged as servants in the performance of duties, which the State as a sovereign has undertaken to perform, have ever been held to render it liable. Nor does this rest upon the narrow ground that there are no means by which such obligations can be enforced, but on the larger ground that no obligations arise therefrom."

In *Gibbons* v. *U. S.*, 8 Wall., 269, 274, the Court say: "No government has ever held itself liable to individuals for the misfeasance, laches, or unauthorized exercise of power by its officers and agents."

"The government does not undertake to guarantee to any persons the fidelity of any of the officers or agents whom it employs, since that would involve it, in all its operations, in endless embarrassments and difficulties and losses, which would be subversive of the public interests." Story on Agency, sec. 319.

In *Gibbons* v. *U. S.*, *supra*, the Court further say: "The cases of *U. S.* v. *Kirkpatrick*, 9 Wheat., 720, and *Dox* v. *Postmaster General*, 1 Pet., 318, establish the principle that even in regard to matters connected with the cause of action by the United States, the government is not responsible for the laches, however gross, of its officers."

It was held in *Lewis* v. *State*, 96 N. Y., 71, that "no principle of law, not any adjudged case, would make the State liable for the negligence or misfeasance of its agents in like manner as a natural person is responsible for the acts of his servants."

See also *Bowen* v. *State*, 108 N. Y., 166, and
*Splittorf* v. *State*, 108 N. Y., 205,
holding similarly.

It is likewise a well established principle of law in this State, that a private action will not lie against counties, townships, school districts, or drainage districts, for injuries occasioned by the negligence of its servants or officers in respect to the performance or non-performance of their duties, and in the application of this rule, there is no distinction between the neglecting to do or perform an act which ought to have been performed and the performance of the duty in a negligent manner. See *Hedges* v. *County of Madison*, 1 Gil., 567; *Town of Waltham* v. *Kemper*, 55 Ill., 346; *Bussell* v. *Town of Steuben*, 57 Ill., 35; *White* v. *County of Bond*, 58 Ill., 297; *Symonds* v. *Clay County*, 71 Ill.,

355; *Hollenbeck* v. *Winnebago County*, 95 Ill., 148; *Cooney* v. *Hartland*, 95 Ill., 516; *Elmore* v. *Drainage Comrs.*, 135 Ill., 269.

If counties, townships, school and drainage districts are not to be held in damages for the negligence of their officers, for the reason that they are governmental corporations, how much less can the sovereignty itself which creates these sub-divisions be so held?

In *Hollenbeck, Admr.,* v. *Winnebago County*, 95 Ill., 148 on p. 162, our Court say: "No reason is perceived why a county should be held to respond in damages for the negligence of its officers. * * * In fact, the powers and duties of counties bear such a due analogy to the governmental functions of the State at large that as well might the State be held responsible for the negligent acts of its officers as counties. They stand in many respects upon the same footing."

While it is true that that portion of the above decision which refers to the liability of the State is mere *obiter,* still it is a clear indication of how our Court would pass upon this question, if same came squarely before it.

In consonance then with the United States Supreme Court, the Courts of Massachusetts and New York and in our own State, this Court has uniformly held and now holds that the State is not responsible for the misfeasance, wrongs, negligence or omissions of duty of its officers, agents or servants, for it does not guarantee to any person the fidelity of the agents or officers whom it employs.

Counsel cites in brief the case of *Holmes* v. *State,* 1 Court of Claims Reports, page 324, as an exception to this rule. This was a claim for damages for injuries sustained in the fall of a defective bridge over the Illinois and Michigan Canal and the claim was allowed by this Court. The distinction here drawn is that the said canal is not a governmental function, but is a business enterprise, conducted for profit. This distinction is clearly drawn in *City of Chicago* v. *Wil-*

*liams,* 182 Ill., 135, where in passing upon a similar question in connection with municipal corporations, on pp. 137, 138, the Court say:

"* * * There is an implied or common law liability for the negligence of municipal officers in the performance of corporate acts, which have relation to the management of the corporate or private concerns of the municipality, from which it derives special or immediate profit or advantage as a corporation. But where acts are done by the officers of towns and cities in their public capacity in the discharge of duties imposed by the law for the public benefit and for the promotion and preservation of the public welfare, no private action lies unless the right to bring it is expressly conferred."

The case in question not coming within this exception, the claim is necessarily rejected, but inasmuch as we recognize that it is a case appealing strongly to sympathy, the rejection of the claim is made without prejudice, and it is expressly directed that such rejection does not conclude the claimant herein or bar his further presentation of his claim to a subsequent legislature.