JAMES L. McCAGHEY, as Administrator, etc., of LEONARD J.
McCAGHEY, Deceased, Claimant, v. THE STATE OF NEW YORK,
Defendant.

## Claim No. 16586.

Court of Claims, April, 1922.

Canals — negligence — death caused by fall of automobile truck from
fill constructed to take place of bridge across canal — road not a public
highway — no recovery against state.

In 1917, as a substitute for a farm bridge formerly located between Herkimer
and Little Falls, the state constructed under authority of chapter 702 of the
Laws of 1915, a fill across the Erie canal for the use and benefit of the owners of
lands intersected by the canal.   The fill consisted of sand, gravel and small stones
drawn from the spoil taken from the Mohawk river during the construction of the
Barge canal.   The old towpath ran east of the north side of the Erie canal to
Little Falls and another possible route to that point was to cross the fill from
its intersection with the towpath, cross the meadows of one S. and the West
Shore railroad tracks to a state highway.   The latter route involved the opening
of four gates or bars which blocked the passage and both routes were more or
less made use of by vehicles, and in drawing sand and gravel from the
spoil banks.   The state having sold 3,000 cubic yards of sand from the spoil
of the Mohawk river, about 800 or 900 feet east of the intersection of the
fill with the towpath, where there was a screening plant which had been
leased by an ice company to the purchaser of the sand, the superintendent
of public works on May 14, 1919, issued to said purchaser a permit to use the
property of the state in the removal of sand, which permit contained the
following clause; " Any damage done to the *canal banks* or *other structures* by
reason of the hauling of material under this permit, shall be immediately
repaired by said South Side Coal Company at its own cost and expense."
Claimants' intestate, an employee of the ice company, having been directed on
August 11, 1919, to go and make certain repairs to the screening plant, took a
converted Knox truck weighing some 4,400 pounds and drove west on the
highway, thence across the West Shore tracks and the farms of S. and the fill
to the old towpath; he then turned east and proceeded down the towpath to
the screening plant, arriving safely.   On returning he drove west on the towpath
to the fill and turned at the intersection, when the wheels of the truck skidded
and went over the west edge of the fill.   Claimant's intestate was on the right-
hand side of his car, and in the fall was caught beneath the machine in about
a foot of water remaining in the canal and was drowned.   The fill which so
far as shown was entirely adequate for the purposes for which it was constructed
had been repaired the preceding year and frequently used up to the time of
the accident in question.   The deceased had no permission from S. or the
railroad company to cross on their respective lands or to cross on the fill.   *Held*,
that the cause of the accident was the failure of deceased to use due care in
turning the corner of the intersection of the fill and the towpath and that the
state owed to him no duty which it had failed to fully discharge and perform
either in the construction or maintenance of the fill and that the state was not
guilty of negligence in such construction or maintenance at the time when and
the place where the deceased met his death, and a claim for damages under
section 47 of the Canal Law will be disallowed.
Each of the four gates which were taken down in order to permit of the journey
of claimants' intestate by the route which he took was notice to him that the
way was not a thoroughfare nor in any sense a public road and was equivalent

to a declaration that travelers along that route accepted whatever perils might be presented, and the deceased in adopting that route did so at his peril and without recourse against the state for any mishap.

CLAIM for death caused by fall into canal.

*Rogers & Sawyer,* for claimant.

*Glenn A. Frank,* deputy attorney-general, for the state of New York.

WEBB, J.   In the construction of the Barge canal the Mohawk river was utilized for canal purposes between Herkimer and Little Falls, and the former Erie canal between those points was abandoned. Some three miles west of Little Falls the state in 1917 constructed a fill across the old Erie canal as a substitute for the farm bridge formerly located there for the use and benefit of owners of lands intersected by the Erie canal; the north end of this fill adjoined the canal towpath, thence it extended south to what was the south bank of the canal, some 84 feet.   The surface of the fill was 12 feet wide on its north side, 10 feet wide on the south side and narrowed to a minimum of $7\frac{1}{2}$ feet in its longitudinal extent; its north elevation was 394.4; south elevation 393.9; lowest elevation 391.7 feet; it was 6 feet above the bottom of the old Erie canal, and its slope was 6.1 in 8 feet.

The material of the fill consisted of sand, gravel and small stones drawn from the spoil taken from the Mohawk river a short distance north of the old canal during Barge canal construction.

The old towpath ran east of the north side of the Erie canal to Little Falls.   Another possible route to that point was to cross the fill from its intersection of the towpath, cross the meadows of one Sharp, and the West Shore railroad tracks to a state highway, though this route involved the opening of four gates or bars which blocked the passage.   Both routes were more or less made use of by conveyances, and in drawing sand and gravel from the spoil banks.

The South Side Coal Company of Little Falls had purchased from the state 3,000 cubic yards of sand from the spoil of the Mohawk river.   This sand was located on the river bank north of the canal towpath, and some 800 or 900 feet east of the intersection of the fill with the towpath; that company had a screening plant in place there.   Under date of May 14, 1919, the superintendent of public works gave to that company a permit to use the property of the state in the removal of the sand, which permit contained the following clause:   " Any damage done to the *canal banks* or *other structures* by reason of the hauling of material under this permit, shall be immediately repaired by said South Side Coal Company at its own cost and expense."

This company had been drawing sand from the spoil bank to Little Falls in 1919, and had, for a part of the time at least, made use of the route by way of the fill. The screening plant had been leased to the coal company by the Reservoir Ice Company, also of Little Falls, and on August eleventh claimant's intestate, who was an employee of the ice company, was directed to go out to the screening plant for the purpose of making certain repairs.

In the afternoon of that day the intestate drove out to the screening plant with a companion, in a converted Knox truck, forty horse power engine and 128-inch wheel base, weighing some 4,400 pounds; and drove west on the highway; thence across the West Shore tracks and Sharp's farms and the fill, to the old towing path; he then turned east and proceeded down the towpath to the screening plant, where he remained about thirty minutes; returning, he drove west on the towpath to the fill and turned at the intersection, when the wheels of the truck skidded and went over the west edge of the fill. The deceased was on the right-hand side of his car, and in the fall was caught beneath the machine in about a foot of water remaining in the canal, and was drowned.

The court has found that the cause of the accident was the failure of the deceased to use due care in turning the corner at the intersection of the fill and the towpath; that the state of New York owed to the deceased no duty which it had failed to fully discharge and perform in the construction or maintenance of the fill across the Erie canal, and that the state was not guilty of any negligence in such construction or maintenance at the time when and in the place where the deceased met his death.

The fill in question was, so far as the evidence showed, entirely adequate for the purposes for which it was constructed. Sharp owned lands on both sides of the old Erie canal to utilize which the state had built for him a canal bridge; upon the abandonment of that canal the state, under authority of chapter 702 of the Laws of 1915, substituted the fill for the bridge.

While the claim was made by the claimant that the construction of the fill was unscientific and inadequate, no proof was presented that the roadway had at any time sloughed off or any accident or mishap had arisen from either the construction or maintenance of the fill. It had been repaired in the preceding year and used frequently up to the time of the accident in question. The deceased made the trip to the screening plant in perfect safety; he had no permission from Sharp or from the railroad company to cross their respective lands, or to cross on the fill; four gates were taken down in order to permit his journey by that route; each of those gates was notice to him that the way was not a thoroughfare nor

in any sense a public road, and each of them, from the view adopted by the court, was equivalent to a declaration that travelers along that route accepted whatever perils might be presented. The deceased in adopting that route did so at his peril and without recourse against the state for any mishap. So far from being invited to use that route the fences advertised the situation to every traveler, warned him that the way was a private one and that it was constructed for private purposes. On his outward journey he made the trip successfully and, naturally enough, assumed he could return in safety. In view of the evidence, both oral and photographic, it is impossible to escape the conclusion either that the deceased took the sharp turn on the narrow roadway at too great a rate of speed for safety, or that because of some defect in his steering apparatus, he was unable to control his car.

By the Canal Law, section 47, the state assumed liability for persons sustaining damages resulting or arising from the neglect or conduct of state officers having charge of the canals, or arising from accidents or other matters connected with the canals, and then added the condition upon which its liability should be determined in these words: "But no judgment shall be awarded by such court for any such damages in any case unless the facts proved therein make out a case which would create a legal liability against the state were the same established in evidence in a court of justice against an individual or corporation."

In the recent case of *Kleinberg* v. *Schween*, 134 App. Div. 493, affirmed by a unanimous court in 198 N. Y. 619, it was determined that an owner of property owes no duty to fence or guard a lawful excavation upon his own land for the protection of persons upon adjacent premises, not a highway or place habitually and notoriously used by the public as a way of passage.

The court said: "The owner of land is not bound by the common law to fence his land or in any way mark the boundaries of his possessions * * *, nor is he under any obligation to make his land safe or to keep it in any particular condition for the benefit of * * * bare licensees coming upon it without his invitation, express or implied."

Previous decisions are to the same effect, notably the case of *Walsh* v. *Fitchburg Railroad Co.*, 145 N. Y. 301, 306. This case is decided in part on the authority of *Splittorf* v. *State*, 108 N. Y. 205, and *Cusick* v. *Adams*, 115 id. 55.

A case strangely similar to the present was presented in *Donahue* v. *State of New York*, 112 N. Y. 142, where a feeder to the Champlain canal was covered by timbers and planks with earth laid

upon it, for more than twenty years, and used as a highway in the city of Cohoes. It was built and maintained by the state, and claimant was injured while crossing it; the court said: " The land in question was the property of the state, and, as such, was appropriated for the use described as a feeder to the canal, and never could have become the subject of any grant for the purpose of a public highway. The most that can be said in favor of appellant's contention is that the state suffered the use of this strip of its canal for the purposes of passage over or upon it; but it was merely by sufferance that it was so used, and not by any agreement or permission. Nor did the state owe any active legal duty to protect those who so made use of its land. It owed a duty to abstain from injuring the plaintiff, either carelessly or intentionally; but it owed her no duty of active vigilance to see that she was not injured, while upon the land for her own convenience."

The deceased certainly had no invitation from the owner of the lands traversed, or from the state of New York, to cross the fill in question. In view of the evidence that many travelers to the spoil bank had made use of this route in reaching it, the deceased had at most a license to use it, but no active vigilance or latent duty was required of the owner in guarding or maintaining the passageway; the license was made use of for his convenience by the deceased, and upon his own assumption of whatever risks might exist along the traveled route. While the owner could not wantonly create a dangerous situation, or intentionally injure the licensee, he was not liable for any negligence in failing to maintain the passageway in a safe condition for travel.

ACKERSON, P. J., concurs.

Judgment accordingly.