William G. Easton, J.
These are death actions arising from an accident which occurred on September 25, 1954 on a former towpath located on New York State canal property in the City of Fulton, New York.
Claimants’ intestates, Naneiel Y. Hubbard and James J. Began, Jr., were drowned in a raceway which served the purpose of furnishing water for generation of electric power by a local utility. This raceway was located immediately east of a portion of the Oswego Biver which runs in a northerly and southerly direction. It adjoined and was to the rear of the general business section of the City of Fulton. To the west of the raceway and along the east side of Oswego Biver is the New York State Barge Canal. Between the raceway and the rear of several adjacent business buildings fronting on First Street, there was a narrow strip of State canal land leading from Oneida Street to the Barge Canal terminal building which strip was being used as a roadway by the State canal employees in connection with the operation and maintenance of the canal. Prior to the construction of the present Barge Canal the old canal was located in the area presently used as the raceway and the narrow strip of land constituted part of the towpath adjoining the old canal. On construction of the new canal the use of the strip of land as a towpath was discontinued as was the canal use of the area presently occupied by the raceway.
On the date of the accident claimants ’ intestates were passengers in a car which was being pushed by another vehicle operated by a Mr. Bichey. The car, while being pushed in an effort to start the motor, entered the aforesaid towpath roadway and while being pushed in a southerly direction at a speed of six or seven miles an hour it veered to the right towards the raceway. As the driver tried to pull it to the left the steering mechanism locked, the car went into the raceway, drowning both Naneiel Y. Hubbard and James J. Began, Jr. Bichey had stopped pushing the car when it began to veer towards the water but it continued to roll on under its own momentum for about 10 feet before it went over the east wall of the raceway and into the water.
There is no question that there were no guardrails or posts separating the roadway from the water. The roadway near the point of the accident was about nine feet wide. The distance from its west edge to the concrete wall of the raceway was about *260 seven and one-half feet, the road being level with the top of the raceway wall.
It is claimants’ contention that the State was negligent in the maintenance of this roadway and that decedents’ deaths were the direct result of the State’s failure to make the roadway reasonably safe.
An important feature of this case is the status of decedents. Were they on State’s canal property as licensees or as invitees? As the car was entering the roadway it passed a sign erected by the State indicating that this was State property and warning against trespassing. Despite the presence of this and other similar signs, claimants urge that this was a public roadway and that claimants’ intestates were invitees at the time of the accident. They adduced evidence that the roadway was used by the public for purposes not connected with the operation and maintenance of the canal. They also introduced into evidence permits authorized by subdivision 16 of section 10 of the Canal Law and issued by the Superintendent of Public Works to owners of property adjoining the towpath roadway.
The towpath was used by the State of New York as part of its canal system. It does not appear that it was ever abandoned or that its status as such was ever changed by any act of the Legislature. In fact, the permits issued by the Superintendent of Public Works pursuant to subdivision 16 of section 10 of the Canal Law and introduced into evidence by the claimants are consistent with such use and tend to establish its status as canal land. Furthermore, the towpath roadway was never dedicated to or made a public street by the City of Fulton. We must conclude, therefore, that the State land comprising the towpath roadway was not a public highway.
Although the public was permitted to use a gatehouse as a means of access to the Oswego River for recreational purposes, it is clear from the presence of the “No Trespassing” sign that they were prohibited from using the towpath roadway. Thus, decedents were trespassers or at best bare licensees. (Hall v. State of New York, 173 Misc. 903 [1940].) They assumed all the risks of the premises except those resulting from intentional, wanton or malicious acts. (Splittorf v. State of New York, 108 N. Y. 205 [1888].)
Even if we were to overlook the trespassing of the decedents, and were to hold that under the continued use of the towpath in question the general public had acquired at least what might be termed a license to use this towpath as a highway arising by implication from long-continued use with the knowledge and acquiescence of the State, yet, even then the claimants would *261 be in no better position to establish their claim'. It was merely by sufferance that the towpath was so used and not by any agreement or permission, and the State owed no legal duty to protect those who made such use of its land except to abstain from injuring them willfully and wantonly. It owed no duty of active vigilance to see that decedents were not injured while using the towpath roadway for their own convenience. (Grimes v. State of New York, 120 Misc. 710 [1923]; Donahue v. State of New York, 112 N. Y. 142 [1889].)
The claims, therefore, must be and hereby are dismissed. Let judgment be entered accordingly.