By the Court,

Cowen, J.
No doubt the plaintiff’s son was a trespasser on the defendant’s premises. It is said the general practice of entering on another’s grounds to hunt for wild animals would warrant the jury in finding a license. No evidence was’given of that practice; and the jury must, I think, have found as matter of law, tnat a trespasser is not without protection from a ferocious dog on the premises. Whether he forfeits all protection from the mere circumstances of being wrongfully there, is the question, and I think the only question of law which the plaintiff in error can raise upon the justice’s return.
The counsel for the defendant in error is doubtless right when he says that a willful and wanton injury by the owner, done to a man or even his beast which is trespassing, can not be justified. Per Burrough, J. in Deane v. Clayton (7 Taunt. 496, 7, 8, 505; Park, J. id, 510). All necessary force to resist the entry, or eject the trespasser after he shall have *281 intruded into the premises, is the utmost remedy which the law. allows by the act of the party injured.' But that is a different question: May a man knowingly keep on his premises a ferocious-dog, in such a way that lie will worry ordinary trespassers in the daytime, without notice of the fact? I think we must take the case thus strongly against the defendant below on the finding of the jury. The distinction between acts done by the owner to repel a trespass, he being present, and his taking measures for the general protection of his rights during his absence, appears to me to be very well considered by Dallas, J. in Deane v. Clayton (7 Taunt. 519, 20). In the former case he can fix himself the necessary measure of violence; in the latter, he can only provide the means with a measure of prudence adapted to his general purpose, and the trespasser must act at his peril.
But the case before us is not one of a man keeping a dog for the necessary. , defence of his garden, his house or his field, and cautiously using him for that purpose in the nighttime (Brock v. Copeland, 1 Esp. R. 203; Sarch v. Blackburn, 4 Carr. & Payne. 297). It is not the case of keeping a useful* - domestic animal, a mischievous bull for instance, in a remote enclosure. Per Lord Kenyon in Brock v. Copeland (l Esp. R. 204). It is not like setting spring guns with public notice of the fact; for even that has been held warrantable as being necessary (Ilolt v. Wilkes, 3 Barn. & Ald. 304). Other like instances are put in that case. And see 7 Taunt. 497, per Burrough, J. Where a dog is lawfully kept for the purposes of protection, a - trespasser can not maintain an action for an injury, if he come in the way1 of the dog (Sarch v. Blackburn, 4 Carr. & Payne, 297; 1 Mood. & Malk. 505, S. C.). And there can be no doubt that, as against a trespasser, aman may make any defensive erection, or keep any defensive ani-/y[499J mal which may be necessary to the protection of his grounds, provided he take due care to confine himself to necessity. But it has been held that in these and the like cases, the defendant shall not be justified, even as against a trespasser, unless he give notice that the instrument of mischief is;-' in the way. That, has been held of spring guns (Bird v. Holbrook, 4 Bing. 628); and it goes oh’tiie principle that secrecy is not necessary to the object/ or, at least, not so necessary that the means may be used to the hazard of human life or human safety. This doctrine was much discussed in the case of Deane v. Clayton (7 Taunt. 489; 2 Marsh, 277, and 1 B. Moore, 203, S. C.). The arguments of counsel are to be found only in Marshall. There, the defensive erection was spikes or dog-spears, fixed along hare-paths, for the destruction of dogs upon the defendant’s premises. The plaintiff’s dog being decoyed by a hare and killed, the judges of the common pleas were equally divided on the question, whether an action lay by the owner of the trespassing dog. But I understand them all to agree, that the case would have been different were the life or even the safety of a human being thus put in hazard. Dallas, J. who-was against the action in that case, yet admitted that “the law distinguishes to many and most essential purposes between property and the life of a man.” In respect to such defences thus applied, Best, C. J. said in both in Ilott v. Wilkes and Bird v. Holbrook, humanity requires that the fullest notice possible should be given, and the law of England will not sanction what is inconsistent with humanity. Much reliance in Deane v. Clayton was placed on the want of notice by Burrough, J. Park, J. said, that with notice, the plaintiff did all he could to keep his . dog away.
But what shall we say of a case involving human safety, perhaps human life, (for 1 think had not others ran to the rescue of the boy, the dogs would'' have killed him,) where a fierce dog is kept without semblance of necessity; a dog which the defendant insisted, as a main point of defence, he had sold to Monro, and therefore did not want, hut still kept about him on his *282 premises? The law of self defence and defence of property are out of the case; and the dog comes to be an idle nuisance. He is neither chained, nor is any effort made to restrain his attacks upon the neighbors. So far from it, a regret is expressed that he had not eaten them up. Here is no criminal wrongdoer entering for the purpose of committing felony or a breach of the peace; no entry into a dwelling or enclosed yard; Burrough, J. (7 Taunt. 497, 8); but the mildest of all technical trespasses, done not secretly, but openly in company with a number of others. Any person might ^ihave killed such a fierce dog kept loose, his vicious disposition being known /to the man who kept him (Putnam, v. Payne, 13 Johns. R. 312; Hinckley v. Emerson, 4 Cowen, 351). He comes within the rule that every man may jábate a public nuisance (Bowers v. Fitzrandolph. Addis. 315). In Smith v. Pelah (2 Str. 1264), Loe, C. J. “ ruled that if a dog has once bit a man, and the owner having notice thereof keeps the dog, and lets him go about or lie at his door, an action will lie against him at the suit of a person who is bit, though it happened by such person’s treading on the dog’s toes: for it was owing to his not hanging the dog on the first notice. And the safety of the king’s subjects ought not afterwards to be endangered.” Hanging is put only by way of example; but in some way such an animal must be properly secured from doing mischief (Jones v. Perry, 2 Esq. R. 482; Norris' Peake, 487, S. C.). This case of Jones v. Perry, was by the father for an injury to his son; and the report in Peake says the child first irritated the dog. He was tied, but by so long a string that he could reach the curb stone on the opposite side of the street. And see Blackman v. Simmons (3 Carr. & Payne, 138).
In short, a man must be governed in these things even as against trespassers, by the nature and object of the article which is kept upon his premises. The business of life must go forward, and the fruits of industry 1 must be protected. A man’s gravel pit is fallen into by trespassing cattle, his I corn eaten, or his sap drunk whereby the cattle are killed; his unruly bull gores 1 the intruder, or his trusty watch dog, properly and honestly kept for protection, worries the unseasonable trespasser. Such consequences can not be absolutely J avoided. Yet so long as he keeps upon the side of humanity, there is little danger that a jury of his neighbors will not place a correct construction upon his acts. With them it must lie, in nice cases, to mark the boundaries of his conduct. In the case before us, we think the defendant below transgressed the plainest outlines of his duty. He put his neighbors in danger without" the semblance of benefit to himself. The judgment against him must be affirmed.