145    301<br>75 AD 557

JAMES WALSH, an Infant, etc., Respondent, *v.* THE FITCHBURG
RAILROAD COMPANY, Appellant.

Defendant owned a plot of ground in the city of T. on which were
railroad tracks and a turntable, built in the usual manner and in good
repair, with its platform elevated above the surface of the ground; the
only way to approach it on a level was by means of the tracks.   A por-
tion of the premises was unfenced, and the public had for a number of
years been accustomed to cross the lot from one street to another.   The
foot path thus worn ran within fifteen or twenty feet of the turntable.
Plaintiff, a child five years and nine months old, went upon said plot,
and, in company with other boys, was playing upon the turntable; in
turning it around, his leg was caught between the rail on the table

and that of a track leading to it, and he was injured. In an action to recover damages it appeared that while turntables might be so fastened when not in use as that people could not turn them, they were not usually so constructed. *Held*, that the facts did not authorize an assumption that the public had been invited to come upon the ground, and while there was an implied license permitting the crossing, one availing himself of it was there by sufferance only, and while defendant owed to him a duty not to injure him either intentionally or by a failure to exercise reasonable care, it owed to him no duty of active vigilance; that the facts did not show a failure to exercise such reasonable care in the management of its business with regard to the turntable, or a violation of any duty defendant owed to plaintiff; that defendant did not owe a duty to the public or the plaintiff to keep the turntable fastened when not in use; and so, that a submission of the question to the jury was error.

*R. R. Co.* v. *Stout* (17 Wall. 657); *Koons* v. *S. L. & I. M. R. R. Co.* (65 Mo. 592); *K. C. R. Co.* v. *Fitzsimmons* (22 Kans. 86); *S. C.* (31 Am. Rep. 203); *Barrett* v. *S. P. Co.* (91 Cal. 296), disapproved.

*Bird* v. *Holbrook* (4 Bing. 628; 15 Eng. Com. Law, 91); *Townsend* v. *Wathen* (9 East, 277); *Clark* v. *Chambers* (L. R. [3 Q. B. Div.] 327); *Lynch* v. *Nurdin* (1 Adol. & El. [N. R.] 29); *S. C.* (41 Eng. Com. Law, 422), distinguished

*Walsh* v. *Fitchburg R. Co.* (78 Hun, 1), reversed.

(Argued February 28, 1895; decided March 12, 1895.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made May 8, 1894, which affirmed a judgment in favor of plaintiff entered upon a verdict and also affirmed an order denying a motion for a new trial.

This action was brought to recover damages for injuries received by plaintiff while upon the premises of defendant, a railroad corporation, through the alleged negligence of the latter.

The facts, so far as material, are stated in the opinion.

*T. F. Hamilton* for appellant. Plaintiff should have been non-suited. (*McAlpin* v. *Powell*, 70 N. Y. 126; *Lamore* v. *C. P. I. Co.*, 101 id. 391; *Cox* v. *N. Y. & H. R. R. Co.*, 11 Hun, 621.) Even if the public passed over a footpath near this turntable with the knowledge of the railroad company, and pedestrians passed along this pathway as mere licensees,

the railroad owed such passers only the duty to do them no intentional harm, and no burden of active vigilance was cast upon the defendant. (*Nicholson* v. *E. R. R. Co.*, 41 N. Y. 531: *Sutton* v. *N. Y. C. & H. R. R. R. Co.*, 66 id. 243.)

*Henry T. Nason* for respondent. If the turntable in question was a dangerous piece of machinery, attractive to children, who with the knowledge and permission of the officers and servants of the railroad company were in the habit of frequenting these premises, and of being on and about this turntable, then it was the duty of the defendant either to warn or forbid these children from going on the turntable, or else to take some precaution in their management of the turntable to prevent the occurrence of such an injury as the one complained of here. (*Townsend* v. *Wather*, 9 East, 277; *Bird* v. *Holbrook*, 4 Bing. 628; *Whirley* v. *Whitman*, 1 Head, 610; *Birge* v. *Gardner*, 17 Conn. 507; *Hydraulic Works Co.* v. *Orr*, 83 Penn. St. 332; *Loomis* v. *Terry*, 17 Wend. 496; *Keffe* v. *M., etc., R. R. Co.*, 21 Minn. 207; *G., etc., R. Co.* v. *Stryon*, 66 Tex. 421; *Bridge* v. *A., etc., R. Co.*, 27 S. C. 456; *Ferguson* v. *C., etc., R. Co.*, 77 Ga. 102; *U. P. R. Co.* v. *Dun*, 37 Kans. 1; *Early* v. *L. S., etc., R. Co.*, 66 Mich. 379; *O'Mally* v. *S. P., etc., R. Co.*, 43 Minn. 289; *I. R. Co.* v. *Herrick*, 1 Wash. St. 446; *Koons* v. *S. L., etc., R. Co.*, 65 Mo. 592.) The plaintiff in this case does not stand before the court in the light of a trespasser, but as a person who has come upon the defendant's premises at their express invitation, and the degree of care required of the defendant must be measured accordingly (*Lynch* v. *Nurdin*, L. R. [12 Q. B.] 29; *Clark* v. *Chambers*, L. R. [32 Q. B. Div.] 327; *Mangam* v. *B. R. R. Co.*, 38 N. Y. 455; *Thurber* v. *H. B. M. & F. R. R. Co.*, 60 id. 326.) No negligence can be imputed to the plaintiff, he being *non sui juris.* (*Kunz* v. *City of Troy*, 104 N. Y. 344; *McGary* v. *Loomis*, 63 id. 104; *Mangam* v. *B. R. R. Co.*, 38 id. 455.) There was no negligence on the part of the plaintiff's parents or guardians which can be imputed to the child. (*Birkett* v. *K. Ice Co.*, 110 N. Y.

504; *Mangam* v. *B. R. R. Co.*, 38 id. 455; *Oldfield* v. *N. Y. C. & H. R. R. R. Co.*, 14 id. 310.) The question of excessive damages will not be considered here, as it is not the province of this court to interfere with the judgment on that ground. (*Oldfield* v. *N. Y. & H. R. R. Co.*, 14 N. Y. 319; *Ihl* v. *F. S. S. R. R. Co.*, 47 id. 321; *Gale* v. *N. Y. C. & H. R. R. R. Co.*, 76 id. 594; *Maher* v. *C. P., N. & E. R. R. R. Co.*, 67 id. 66; *Link* v. *Sheldon*, 136 id. 5.)

PECKHAM, J. The defendant owned a plot of ground in the northern portion of the city of Troy, bounded by four different streets. Quite a large portion of its land was unfenced and the public had for a number of years been accustomed to walk across this plot for the purpose of shortening the distance, instead of going around by the public streets. The land was approached from the north on the same grade as the public street and the defendant laid its tracks through the street and on to the plot for the purpose of using it in the ordinary transaction of its business. It was not used for the purpose of a depot and the land itself was rough, uneven, overgrown with weeds and grass and not fit for use by horses and wagons and was not so used. The public were not invited upon the land in any sense further than that the defendant had not taken occasion to prevent the public from using a portion of it as a footpath for the purpose already stated. The footpath thus marked out by use ran within fifteen or twenty feet of the turntable of the defendant, which was used by it in the ordinary course of its business. The surface of the table was in some places about three feet above the grade of the plot and at others it was eight or nine feet above grade. The only way to approach it on the level was by the use of the tracks of the defendant which led on to the table and it was used for the purpose of taking the defendant's engines and turning them around. The turntable was built in the usual manner and was in perfect repair. The main tracks of the defendant ran through the eastern portion of the plot. The turntable was west of the main tracks.

On the 31st of August, 1888, the plaintiff, who was at that time a child of the age of five years and nine months, had come upon the defendant's premises, and, in company with several other and older boys, was playing on the turntable, and, in the course of turning the table around, the plaintiff had his leg caught between the rail on the table and the rail on the adjoining earth and he was severely injured. This action has been brought for the purpose of recovering damages for those injuries, and a recovery has been had which has been sustained by the General Term.

Plaintiff bases his right to maintain this action upon the allegation that the defendant, by permitting the public to go upon its land in the manner stated, had in effect invited such entrance, and was bound on that account to use greater care to prevent an accident of this nature.

A further ground is stated that, in using the turntable, even upon its own property, under circumstances which rendered it probable that children would come upon the land and play upon the turntable, it was bound to the exercise of greater care than it had observed; that it was bound to guard the table in such a way that children could not come upon it, or to station a man there to prevent their entrance, or else the defendant should have used some kind of a device which would or might prevent the turning of the table while it was not in use by defendant. The defendant contends that the plaintiff had not been invited to come upon its grounds, either expressly or by any implication arising from its conduct in simply permitting the public to cross a portion of its grounds as a short cut between two streets, and that it was not bound to any active vigilance in the matter, and was only bound to such reasonable care and caution as any one ought to take to prevent injury to another, and that, guided by that rule, it had not, as matter of law, been guilty of any negligence.

As to the assumed invitation held out to the public, there is nothing in the facts found in this record which justifies any such assumption. The plaintiff was not on the land by invitation of the defendant nor in its business, but for his own pur-

poses totally disconnected with the defendant's business. He was not a trespasser in the sense of his being unlawfully upon the premises, because the defendant, by its course of conduct, had impliedly granted a license to the public to use the land for the purpose above mentioned. This license, of course, could at any time have been revoked, and then any one going upon the land would have been a trespasser. But under the circumstances, treating the plaintiff as an adult, and simply upon the question of the invitation held out to him, he was there by sufferance only. The defendant had no right intentionally to injure him, and it would be liable if it heedlessly or carelessly injured him while performing its own business. It owed him a duty to abstain from injuring him either intentionally or by failing to exercise reasonable care, but it did not owe him the duty of active vigilance to see that he was not injured while upon its land merely by permission for his own convenience. (*Nicholson* v. *Erie R'way Co.*, 41 N. Y. 525; *Byrne* v. *Railroad Co.*, 104 id. 363; *Splittorf* v. *State of New York*, 108 id. 205; *Cusick* v. *Adams*, 115 id. 55.) We think there is no proof whatever that the defendant, so far as its duty to plaintiff is concerned, failed to exercise reasonable care in the conduct of its business with regard to this machine.

We are of the opinion that the defendant has not been shown guilty of a violation of its duty, nor has a question been made for the jury in that respect by proof that it used the turntable in the manner it did. It is true that some means might have been adopted which possibly might have prevented the happening of this accident. The proof is that turntables are not generally constructed with bolts for the purpose of keeping them steady. Such bolts do not come with the table from the factory. Nothing of that kind is essential to the machine or for its legitimate and proper use. The table might have been kept so fastened or locked when not in use that people could not turn it without unfastening or unlocking it, and the defendant might even have built a wall around it so high and guarded it so closely as to prevent any access to it

by children at any time.   But was defendant bound to do so?
Did it owe any such duty to the public or to this plaintiff?
The turntable was on its own land; it was used by the defend-
ant for the sole purpose of properly conducting its own busi-
ness; it was a fit and proper machine for that purpose; it was
not of the nature of a trap for the unwary; it was not built
in any improper or negligent way with reference to the trans-
action of the business of the defendant.   What further duty
did it owe to those who had no business upon its land, who
came there unasked and whose presence was simply tolerated?

Upon the question of alluring plaintiff, we do not think it
can be correctly said defendant either enticed or allured him
to come upon its land.

The whole case in this aspect rests upon the doctrine that
the turntable was, as to children of tender years, a dangerous
and at the same time an enticing machine, one which, when
seen, would inevitably and infallibly allure children to come
upon it for the purpose of playing upon it, and that the
natural and probable result of such play would be the injury
of the child.   Under such circumstances it is claimed that a
person owning such a machine, although it be used on his own
land, is bound to exercise extra vigilance for the purpose of
preventing injury to children who come upon the defendant's
land allured by the machine and ignorant of its dangers.   We
do not think the facts of this case bring it within any such
principle.   The leading case in this country, and one which
undoubtedly sustains the plaintiff's contention that it is a case
for the jury, is that of *R. R. Co.* v. *Stout* (17 Wall. 657).
That case has been followed in many states.   In Missouri
(*Koons* v. *R. R. Co.*, 65 Mo. 592); in Kansas (*Ry. Co.* v.
*Fitzsimmons*, 22 Kans. 686; *S. C.*, 31 Am. Rep. 203, report-
er's note at p. 206); in California (*Barrett* v. *So. Pacific Co.*,
91 Cal. 296); and in some other states.   The contrary princi-
ple has been announced and held in *Daniels* v. *R. R. Co.*
(154 Mass. 349), and *Frost* v. *Eastern R. R. Co.* (64 N. H.
220).

We think the better rule is laid down in the two cases last

cited.   We do not assert that the defendant owed no duty to
the plaintiff under the circumstances existing, but we think it
did not owe the duty of such active vigilance as would be
necessary to exist in order to send the case to the jury and
permit it to find the defendant guilty of negligence in this
case.   The court, in *McAlpin* v. *Powell* (70 N. Y. 126),
while distinguishing it from the *Stout* case (*supra*), expresses
doubt of the correctness of the application of the principle
in the latter case.

We have not had occasion to decide the question up to this
time, but now that it is presented, we not only reiterate the
doubt which we expressed in the *McAlpin* case (*supra*), but
we think that the question of the defendant's negligence was
erroneously submitted to the jury in the *Stout* case, and that
we ought not to follow it as a precedent.   We think it is not
a question of fact to be submitted to the jury for its determi-
nation whether the defendant has or has not been guilty of
negligence under such circumstances as appear in this case.
Upon such facts we hold the defendant has violated no duty
it owed the plaintiff.   It is not contended for a moment that
a person on his own land may under all circumstances do any-
thing that he chooses without being held liable to answer in
damages for injuries which are direct and probable and
natural results of his action.   We only say this is no such
case.   The case of *Bird* v. *Holbrook* (4 Bing. 628; 15 Eng.
Com. Law, 91) is cited as analogous in principle to that which
plaintiff urges in this case.   We do not think so.   The
defendant in that case for the protection of his property,
some of which had theretofore been stolen, set a spring gun,
without notice, in his walled garden at a distance from his
house.   The plaintiff, who climbed over the wall in pursuit of
a stray fowl, having been injured, it was held that the
defendant was liable to him in damages.   In that case the
plea was made that the defendant had the right to protect his
own property, and that one who was injured without having
been invited upon the land, and who was unlawfully there,
could maintain no action.   It was held that the action was

maintainable, for otherwise it might result in a mere trespass being made a capital offense. Chief Justice BEST said that the practice (without giving notice) was inhuman and the proof showed that the defendant had placed the spring gun on the wall for the express purpose of doing injury and that he had refused to give notice of its existence on the ground that if he gave notice he would fail to catch any one. The chief justice said that the defendant intended that the gun should be discharged and that the contents should be lodged in the body of his victim, and that he who sets spring guns without giving notice is guilty of an inhuman act, and if injurious consequences ensue he is liable to yield redress to the sufferer. The difference in the two cases is so plain as to require no discussion.

Cases are also cited where the defendant, for the purpose and with the intention of enticing his neighbor's dogs upon his premises, set traps very near the line of the highway, and then baited them with decaying meat, so that the scent was cast not only in the highway but upon the private premises of the plaintiff, whose dogs taking the scent came upon the defendant's grounds and were taken in a trap and thereby killed. One of such is the case of *Townsend* v. *Wathen* (9 East, 277). The court held the defendant liable upon the ground that one who sets traps to catch his neighbor's dogs, although the traps were set on his own ground, was liable for his wrongful intent and act and it was fit to be left to the jury whether it was not defendant's intention to catch the plaintiff's dogs, and it was held that a man must not set traps of a dangerous description in a situation to invite, and for the particular purpose of inviting, his neighbor's dogs, as it would compel them, by their instinct, to come into the trap. The act of the defendant in that case was not done in the prosecution of his immediate and proper business, but, as the court held, was a mere malicious attempt, successful in its result, to entice his neighbor's animals upon his property, and the enticement was effected by the means spoken of.

Quite a discussion upon the subject of the acts of an owner

upon his own land, directed to the preservation of game or
to the destruction of dogs, etc., is to be found in the case of
*Deane* v. *Clayton* (2 Eng. Com. Law. 183). In that case the
court was equally divided, and so no judgment was rendered.
The distinction is clear between acts of the nature spoken of
in this case and those which are performed by an individual
in the legitimate and honest conduct of his own business upon
his own land. As is said by Mr. Justice C<small>OWEN</small> in *Loomis* v.
*Terry* (17 Wend. 497) : " The business of life must go for-
ward and the fruits of industry must be protected. A man's
gravel pit is fallen into by trespassing cattle ; his corn eaten
or his sap drunk, whereby the cattle are killed ; his unruly bull
gores the intruder, or his trusty watch dog, properly and hon-
estly kept for protection, worries the unseasonable trespasser.
Such consequences cannot be absolutely avoided." The case
of *Clark* v. *Chambers* (L. R., 3 Q. B. D. 327) is also cited as
in some degree applicable. In that case the defendant erected
a barrier along a way which it was admitted he had no legal right
to erect. It was erected for the purpose of keeping people
from traveling where they had a right to travel. The barrier
which he erected was armed with spikes, and was a dangerous
obstacle. Some person, without the defendant's authority,
removed a part of the barrier from where the defendant had
placed it and put it into an upright position across a footpath.
The plaintiff, on a dark night, was lawfully passing along the
road on his way from one of the houses to which the footpath
led, when he came in contact with the spikes in the barrier
and injured one of his eyes. The jury found that the barrier
was in the road and dangerous to the safety of a person using
it. It was held that the defendant, having unlawfully placed
a dangerous instrument in the road, was liable in respect of
injuries occasioned by it to the plaintiff, who was lawfully
using the road, notwithstanding the fact that the immediate
cause of the injury was the intervening act of a third party
in removing the dangerous instrument to the footpath from
the carriageway where defendant had placed it. In that case
you start out with the admission that the act of the defendant

was unlawful, and all that follows thereafter was held by the court to be the natural and probable result of his unlawful act.

In *Lynch* v. *Nurdin* (1 Adol. & El. [N. R.] 29 ; *S. C.*, 41 Eng. Com. Law, 422) the plaintiff was a child seven years of age and the cartman of the defendant went into a house in London and left his horse and cart standing at the door without any person to take care of them, for about half an hour. The plaintiff got into the cart during the cartman's absence, and another boy led the horse on, and as plaintiff was about getting off the shaft the horse started and plaintiff fell and was run over by the wheel, and his leg broken. The trial justice left it to the jury to say, *first*, whether it was negligence in the defendant's servant to leave the horse and cart for half an hour, and, *secondly*, whether that negligence occasioned the accident. There was a verdict for the plaintiff. On the return of an order to show cause why a new trial should not be had, Lord Denman, Chief Justice, held that the case was properly submitted to the jury and the defendant was properly held negligent by the jury, and although the child had no business on the cart, and if an adult it would be said that his own negligence contributed to the injury, yet the child merely indulged his natural instinct in amusing himself with the empty cart and the deserted horse, and, therefore, it could not be said that he was negligent or that his action contributed to the injury within the legal sense of that term, and, therefore, the defendant could not be permitted to avail himself of that fact. In the course of his opinion the chief justice said there was a clear distinction to be taken between the willful act done by the defendant in the spring gun case, deliberately planting a dangerous weapon in his ground with the design of deterring trespassers, and the mere negligence of the defendant's servant in leaving his cart in the open street. In the latter case the liability of defendant is simply for negligence. There is a great difference in the facts between the case of *Lynch* v. *Nurdin* and the present case. Leaving a horse and cart in a public street unattended and loose, subject to natural observation and interference from

children passing along the street, might be held a proper question for the jury to say whether it was or was not negligence, while in the case of a defendant engaged upon his own land in simply doing that which it is necessary to do in order that he may carry on his business properly and who fails to exercise the highest vigilance in order to protect from possible harm children who may stray upon his land for no other purpose than recreation, we think there is an absence of any fact upon which a jury ought to be permitted to find negligence. The defendant in the one case was not upon his own land nor was he engaged in the proper transaction of his business thereon, but, on the contrary, he was in a public street and improperly left his horse and cart therein unattended and where others, and among them children, had the same right to be that he had. In the case of this defendant, on the other hand, the turntable was on its own land, it was a proper and appropriate machine for the carrying on of its business, it was properly made and it was properly used by the defendant. To liken such a case to the allurement of dogs by the spreading of tainted meat over traps on defendant's lands, done for the very purpose of injury, is as it seems to me to lose sight of the different principles upon which the cases rest.

At any rate we think that the plaintiff failed to show any actionable negligence on the part of the defendant, and a submission to the jury of the question of such negligence was error. All that can be said on either side of the question has been set forth in the *Stout* case and the various other cases cited above, and a continuation of the discussion would be fruitless.

We think the judgment for plaintiff must be reversed and a new trial granted, costs to abide the event.

All concur.

Judgment reversed.