Summers, J.
It is contended that the verdict is against the weight of the evidence; that the court erred in excluding the testimony tending to justify the keeping of the dogs, and erred in its instructions to the jury, and that the damages are excessive, because the plaintiff was seeking work, and the fact of his being bitten being the means of his obtaining employment was a benefit rather than an injury. These contentions other than the last will be considered.
In Hayes v. Smith, 62 Ohio St., 161, it is held that: “The gist of an action to recover damages for a personal' injury inflicted by a vicious dog, is the keeping of the dog' in a negligent manner, after knowledge of his vicious pro *306 'pensities,- rather than the keeping of the animal with such knowledge. ”
This seems to be contra to the almost unbroken current of authority.
In May v. Burdett, 9 Q B., 101; 3rd English Ruling Oases, 108, in an action on the case for keeping a monkey which the defendant knew to be accustomed to bite people, and which bit the plaintiff, it was objected, on the part of the defendant, that the declaration was bad for not alleging negligence or seme default of the defendant in not properly or securely keeping the animal, Lord Denman, O, J., in the opinion, says: “A great many cases and precedents were cited upon the argument; and the conclusion to be drawn from them appears to us to be that the declaration is good upon the face of it; and that whoever keeps an animal accustomed to attack and bite mankind, with knowledge that it is so accustomed, is prima facie liable in an action on the case at the suit of any person attacked and injured by the animal, without any averment of negligence or default in the securing or taking care of it. The gist of the action is the keeping the animal after knowledge of its mischievous propensities.”
Then, after considering some of the cases, he says: “But the conclusion to be drawn from an examination of all the authorities appears to us to be this: That a person keeping a mischievous animal with knowledge of its propensities is bound to keep it secure at his peril, and that, if it does mischief,negligence is presumed, without express averment. The precedents as well as the authorities fully warrant this conclusion, The negligence is in keeping such an animal after notice,”
The same principle was applied at the same term (1846) by the court of exchequer in Jackson v. Smithson, 15 M & W, 565, a case of injury by a ram, Alderson, B., observing: “I can see no distinction between the case of an animal which breaks through the tameness of its nature, and •one that is ferae naturae;” and was applied also in the court of common pleas, in 1848, in Card v. Case, 5 C. B., 622, ,a case of a dog known to be ferocious.
In Spring Company v. Edgar, 99 U. S., 645, a case •>of an attack by a male deer, the same principle is ap *307 plied, Mr, Justice Clifford in the opinioh quoting from May v. Burdett, supra, says (652): “And the chief justice added, what it is important to observe, that the gist of the action is the keeping of the animal after knowledge of its mischievous propensities. ”
These English cases are cited with approval and the same ruling is made in Popplewell v. Pierce, 10 Cush., 509, a suit to recover for injuries inflicted by a horse accustomed to bite mankind and kept by defendants with knowledge of the fact. The same ruling is made in Muller v. McKesson, et al., 73 N. Y., 195; 29 Am. R. 123. The cases are reviewed in the opinion, and the defenses of contributory negligence, assuming the risk and negligence of fellow servants, are considered. Tn the opinioh (199) Church, C. J.,says: “It may be that, in a certain sense, an action against the owner for an injury by a vicious dog, or other animal, is based upon negligence; but such negligence consists not in the manner of keeping or confining the animal, or the care exercised in respect to confining him, but in the fact that he is ferocious, and that the owner knows it, and proof that he is of a savage and ferocious nature is equivalent to express notice,” Again, on page 200, “In some of the cases it is said that from the vicious propensity and knowledge of the owner negligence will be presumed, and in others that the owner is prima facie liable. This language does not mean that the presumption or prima facie case may be rebutted by proof of any amount of care on the part of the owner in keeping or restraining the animal, and unless he can be relieved by some act or omission on the part of the person injured, his liability is absolute.” And again on page 201: “The apparent conflict on this point (contributory negligence) arises, I think, mainly in not making a proper application of the language to the facts of the particular case. If. a person with full knowledge of the evil propensities of an animal wantonly excites him, or voluntarily and unnecessarily puts himself in the way of such an animal, he would be adjudged to have brought the injury upon himself, and ought not to be entitled to recover. In such a case it can not be said, in a legal sense, that the keeping of the animal, which is the gravamen of the offense, produced the injury.”
*308 And again, on page 204, he says: “As negligence, in the ordinary sense, is not the ground of liability, so contributory negligence, in its ordinary meaning, is not a defense, These terms are not used in a strictly legal sense in this class of actions, but for convenience, There is considerable reason in favor of the doctrine of absolute liability for injuries produced by a savage dog, whose propensities are known to the owner, on the ground of its being in the interest of humanity, and out of regard to the sanctity of human life, but as these animals have different degrees of ferocity, and the rule must be a general one, I think, in view of all the authorities, that the rule of liability before indicated is a reasonable one, and that the owner can not be relieved from it by any act of the person injured, unless it be one from which it can be affirmed that he caused the injury himself, with a full knowledge of its probable consequence. ”
Wolf v. Chalker, 31 Conn., 121; 81 Am. Dec., 175, is a leading case in which the same conclusion is reached.
The same rule is followed in Laverone v. Mangianti, 41 Cal., 138; 10 Am. R., 269, In a dissenting opinion, Crockett,, J., says: (143) “If the earlier cases establish a different rule, the interests of society demand that it should now be abrogated, considering the various useful purposes for which such animals are now employed.”
He contends for the adoption of the rule laid down in Hayes v. Smith, supra.
Mann v. Weiand, 81½ Pa. St., 243, also follows May v. Burdett, supra, See also Roehers v. Remhoff, 55 N. J. L., 475.
There are any cases that follow the rule, and expressly hold that the liability exists even to a trespasser. Loomis v. Terry, 17 Wendell, 497; Marble v. Ross, 124 Mass., 44; Sherfey v. Bartley, 4 Sneed, 58; 67 Am. Dec. 597. The reason is that to repel a trespasser, no more force than is necessary may be used; that one may not kill or seriously injure another merely because he is trespassing or to prevent him from so doing, and that, since one may not do indirectly what he may not do directly, he may not knowingly permit his vicious dogs to be at large, and then say to the trespasser when he is bitten, I did not set the dogs up *309 on you, and am not therefore liable. That result is so probable that it is presumed to have been intended, and is held to be wanton.
The rule adopted in Hayes v. Smith, supra, is perhaps more suited to present conditions, and therefore wiser than that prevailing elsewhere. In his work on Torts, page 411, Judge Cooley says: “Bat admitting the prima facie case, may not the keeper show that the animal was kept by him with due care and for some commendable purpose, and that he escaped under circumstances free from fault in him? The keeping of wild animals for many purposes has come to be recognized as proper and useful; they are exhibited through the country with the public license and approval; governments and municipal corporations expend large sums in obtaining and providing for them; and the idea of legal wrong in keeping and exhibiting them is never indulged. It seems, therefore',safe to say that the liability of the owner or keeper, for any injury done by them to the person or property of others, must rest on the doctrine of negligence, A very high degree of care is demanded of those who have them in charge, but if, notwithstanding such care, they are enabled to commit mischief, the case should be referred to the category of accidental injuries for which a civil action will not lie. ’ ’ '
And in a note on page 412, he says; “As to the law respecting the keeping of wild beasts' we should say that the higher cultivation of the intellect of the mass of the people, as compared with two or three centuries ago, and the recognition of wants in human nature then ignored, must hare worked some changes, and that we must take up the common law of that period in this as in many other particulars more*to locate accurately our point of departure than to fix definitely a stake to which we must tie and adhere. When wild animals are kept for some purpose rec-' ognized as not censurable, all we can demand of the keeper is that he should take that superior precaution to prevent their doing mischief which their propensities in that direction justly demand of him.”
In many of the states statutes have been passed regulating the manner of keeping dogs. In Georgia the statute provides *310 that “A person who owns or keeps a vicious or dangerous animal of any kind, and by the careless management of the same, or by allowing the same to go at liberty, another, without fault on his part, is injured thereby, such owner or keeper shall be liable in damages for such injury.”
In Conway v. Grant, 88 Ga., 40; 14 L. R. A., 196; Bleckley, C. J,, said: “The ferocious character of a dog and the knowledge of the owner are sufficiently alleged. The only matter of controversy is touching the fault of the , plaintiff in exposing himself to attack by entering the premises of the defendant where the dogs were kept. There was an open gate in the rear of the premises, and the plaintiff, according to his declaration, was on lawful business, being in search of employment as a carpenter, and seeing indications that such work was probably carried on in a certain house, he entered the premises for the purpose of making engagement or to work, having no notice or knowledge of the dogs. In this way he became exposed, and was bitten. We think a cause of action is substantially set forth.” Then, after quoting the statute as above, he says: “The fault here referred to is-not that of being a trespasser, but that of being in some' way instrumental in provoking or bringing on the attack complained of, It must, at the same time, be understood that the right of redrbss of the injured person will be defeated if the injury was caused by his own fault. A person who irritates an animal, and is bitten or kicked in turn, is deemed in law to have consented to the damage sustained, and can not recover. But if the fault of th& injured party had no necessary or natural and usual connection with the injury, operating to produce the injury as cause produces effect, the owner of the - animal will be liable. For example, the defendant keeps upon his premises a ferocious dog, and the plaintiff, having no notice that such dog is there, trespasses in the day time upon the premises, and the dog rushes upon him and bites-him, the defendant is liable, since it is not the necessary or natural and usual consequence of a person’s trespassing upon, a man’s premises by day that he should be attacked by a savage dog. Bigelow, Torts, pp. 249, 250. Though the-gate was open, and the plaintiff was on lawful busi *311 ness, it may be that he had no strict legal right to enter the premises from the rear. But this would be no justification for leaving dangerous dogs loose on the premises to bite him or others that might so intrude, Such dangerous means of defense against mere trespassers the law will not countenance.”
This, however, seems to apply the common law rule rather than the statute.
In Swift v. Applebone, 23 Mich., 251,in an action under a statute where liabiliity did not depend upon scienter, Coolev, J., says: pp. 257, 258: ‘‘But we think that in any case of such injury, the fact of knowlege, in the owner, of the vicious disposition of his dog, may very properly go to the jury, as one to be taken into account by them in estimating the damages; and that one who knowingly subjects every person who passes his house to the risk of being torn by a savage beast, can not demand, as a right, that the recklessness of his conduct shall be excluded from the jury when compensation to the injured party is being estimated. The jury should judge of such a case in view of all the circumstances; and as the sense of injury suffered will depeind very largely upon the disposition shown by the owner of the dog to respect or disregard the rights of others, it is proper that the jury know what that disposition has been, Recklessness of conduct, or the want of due and reasonable care, is an important element in estimating the damages in most cases of tort, and we know of no reason why this case should be made an exception. It would be absurd to hold that if defendants had instigated the dog to commit the injury, the plainiff’s recovery should be measured by the same standard that it would have been had the attack been made without their knowledge, by an animal never known to be vicious before; and if malicious conduct on their part should affect the damages, reckless conduct can not be regarded as immaterial, The true course in such cases, we think, is to place all the facts before the jury, and let their opinion *of the proper compensation to be awarded be formed of them all,”
In the well considered case Meibus v. Dodge, 38 Wis., 300, where a boy who attempted to take a whip from a sleigh on the street was bitten, it is held that if the defend *312 ant was guilty of such negligence as evinced a wanton disregard of the safety of others, the jury might give exemplary damages, and that where the case is one for such damages,, proof of defendant’s pecuniary circumstances is admissible.
In Brown v. Carpenter, 26 Vt., 638, the trial judge-charged the jury that every dog not confined, or physically restrained, is a dog at large. This is approved and' Redfieid, O. J., says, page 641: “We think that a> ferocious and overgrown dog, known to the owner or keeper to be accustomed to bite mankind, is to be regarded as at large, within the common import of those terms,in a plea in bar, when he is so far free from restraint, as to be liable to do mischief to man or beast; and this, such a dog is always liable to do when not physically restrained, in the language of the judge in the court below. His being in the presence of his keeper affords no safe assurance that his known propensities will not prevail over the restraints, of authority. That is the case with men often, and always liable to be with ferocious animals, as is said by one judge: ‘I think sufficient caution had not been used; one who keeps a savage dog is bound to so secure it as to effectually pre vent it doing mischief.’.”
In Godeau v. Blood, 52 Vt, 251, the court holds that', apprehension of hydrophobia, although there is no evidence that the dog was rabid, is proper to be taken into consideration in determining the amount of damages.
In Sylvester v. Maag, 155 Pa. St. 225, a case in which the plaintiff was bitten on premises occupied by the defendant, the defendant placed on a post in a lane leading to the house a sign,“Beware of the Dog”. The plaintiff knowing that the dogs were accustomed to bite, and the evidence tending to prove that the plaintiff was lawfully on the defendant’s premises when he was bitten, and that the dog by which he was bitten was vicious,and that the defendant had knowledge of it; the court held that the plaintiff was not as a matter of law guilty of contributory negligence, but that the question was for the jury,and in a per curiam say in conclusion: “Those who indulge in the luxury,or enjoy the convenience, of keeping, within the city limits, dogs which they know are ferocious and dangerous, must see that they are so secured that persons lawfully going upon their premises- *313 ■or along the highway may not be bitten, or they must expect to suffer the consequences of their neglect to do so.”
W. C. Bates, for Plaintiff in Error.
John J. Chester and A. T, Seymour, for Defendants in Error.
The charge of the court is to the effect that the plaintiff is entitled to recover if he was without fault and the dogs were vicious and the defendant kept them with knowledge of their vieiousness. This,under the rule of Hays v. Smith, supra, is erroneous; the defendant is not liable unless the injuries resulted from his negligence in the manner of keeping the dogs.
It was attempted to make a case for exemplary damages, and it was error to exclude the testimony tending to prove that the defendant in keeping the dogs in the manner he did, was not reckless or wanton, and if this evidence had been admitted, it is probable, in view of the small amount allowed as punitive damages, that no punitive damages would have been allowed; and while attorney fees are recoverable as compensatory damages, they are recoverable as such only in cases proper for the infliction of exemplary damages, Finney v. Smith, 31 Ohio St., 529, and the exclusion of the testimony was therefore doubly prejudicial,as attorney fees and punitive damages were both awarded.
For these errors the judgment is reversed, and the case remanded for a new tiral.