Brewster, J.
Plaintiff appeals from a no cause verdict in a death case — negligence action. Defendant offered no proof.
Defendant was the lessee in possession and control of a • warehouse building at 39 Colonie Street, Albany. At the time in question, August 29, 1944, and for twelve or fourteen days prior thereto, two painters in its employ were engaged in working there painting the interior. Installed in the building was a freight elevator, operated by push button control. Its interior dimensions were twelve by fifteen feet and it was so installed that at its . lowest descended position the floor of the lift was three feet above the adjacent surface of Colonie Street. Attached to the building was a push-up door which closed off the opening into the elevator on its Colonie Street side. There was no other door or means of closing off that side of the elevator, so when it ascended that side was open to the wall of the building, between which an open space of some seven inches intervened.
Plaintiff’s intestate was her daughter, a child six years old, who, with other children, lived in the near neighborhood.
Defendant’s employees had been working in the warehouse twelve to fourteen days prior to the accident, during which time, and every day, they used the elevator, and during which time children were around the building, and on some of those days, four or five apparently, they played about both in and out of the warehouse building, and on one occasion these employees put one of them out of the building. The *125 evidence is that other than defendant’s two painters no one else had charge of defendant’s building during said period; that they knew that neighborhood children played in the space adjacent to the opening into the elevator or its shaft, and sufferéd and permitted such, including actual knowledge of the presence there on the evening of the accident of the deceased child and her playmate, one Louis Warrick, a hoy of ten years, he being the one whom they had put out of the building on a former occasion.
On the day of the accident defendant’s employees came to the building and started work at 6 p. m. At this time the outside door of the building which closed off the elevator from Colonie Street was closed and the elevator was at the ground floor. They opened this door and it remained open until after the accident. They then raised the elevator to the second floor, did some work there and then brought it hack to the ground floor. Then, for some reason unexplained, the two painters sat down on the floor of the elevator, at its Colonie Street edge, with their feet hanging off and out in Colonie Street, for some twenty minutes or half hour, “ talking to the kids ” among whom were the deceased and her playmate, Louis Warrick. There is evidence from which a considerable degree of intimate acquaintanceship between defendant’s employees and these children could be inferred.
The evidence is that when they had “ finished talking ” to the children, defendant’s employees arose, went farther inside the elevator, when one of them began to stir some paint and the other started the elevator and operated it to the third floor. Then, per the record: “ Q. And what was the next thing you heard when you got onto the third floor? A. We heard little Louie holler that she fell.” The accident had then occurred. It was that the ten-year-old Louis Warrick and the deceased had gotten onto the elevator when or just before it started, and had ridden up to the third floor, whereupon Mary Ella, the deceased, “ went to look out of the window and she fell ” down through the space between the elevator and the wall of the building into the elevator pit, and to her death.
There was conflict in the evidence as to whether defendant’s employees had actual knowledge of the presence of the children in the elevator prior to the accident. Defendant’s employees testified they had no such knowledge until the boy, Louis War-rick, made his outcry. But from his testimony and other evidence the jury could have found that the defendant’s employees did know of. the presence of the children with them in the eleva *126 tor, at least at some time before the accident. This conflict in the evidence was resolved in favor of defendant and 1 do not think we may say such was against the weight of the evidence.
Early in his charge to the jury, the court instructed them as follows: “I have said to you that negligence is the failure to exercise reasonable care, the failure to anticipate the danger that a reasonably careful and prudent person would have anticipated under given circumstances, 'as the jury would judge the conduct of a reasonably careful and prudent person, and I charge you that this defendant cannot be held responsible for the occurrence of this accident unless these painters had some knowledge that these children were on the elevator, that they were not required to anticipate, and this is important in this case — that this defendant’s employes were not required to anticipate that these children would get upon the elevator. That they can be said to be negligent by you, only if they knew — not that they should have known — but only if they knew that these children were on the elevator. I charge you that if you find that these employes did not know that these children were on the elevator, then this plaintiff cannot recover in this case. She may recover only in the first place if they knew that the children were on the elevator * * *.” (Italics supplied.) Then after reviewing the evidence and pointing to the conflict therein upon the proposition of defendant’s employees’ knowledge of the presence of the children in the elevator, the court further stated: “ So that the first thing you should address yourselves to — it seems to me when you retire and commence your deliberations — is the determination of the crucial question in this case as to whether or not these employes — these painters — knew, actually knew that these children were on the elevator when they started it- * * The foregoing charge was sufficiently excepted to by plaintiff’s attorney.
Whether the foregoing instruction was a correct statement of the law of the case is the question presented. We are to decide whether, as a matter of law, the jury should have been permitted to find defendant liable in negligence even though defendant’s employees did not actually know of the presence of the children on the elevator prior to the accident, and this leads us to a consideration of the liability of the possessor of dangerous machinery, devices, or places where children are known and suffered and permitted to be about and in near proximity thereto.
*127 If we adhere rigidly to the straight rule and doctrine of non-liability for “ attractive nuisance,” and so apply it to the facts, or if we likewise apply to deceased her classification as a trespasser in and upon the elevator, then doubtless the court’s charge was correct.
The rule in this State as to nuisance or maintenance on one’s own premises of situations or things attractive to children and which bring them injury was early stated in Walsh v. Fitchburg R. R. Co, (145 N. Y. 301), (the turntable case). But in its statement the breadth of its application is limited in these, words (p. 308), “It is not contended for a moment that a person on his own land may under all circumstances do anything that he chooses without being held liable to answer in damages for injuries which are direct and probable and natural results of his action. We only say this is no such case.” In that case the child (injured while playing on a turntable), was held to have not been a trespasser, but, under the facts, a licensee to whom it was said defendant owed no “ duty of active vigilance to see that he was not injured, ” (italics supplied) where he was thus permitted to be, but it was stated (p. 306), that defendant “ would be liable if it heedlessly or carelessly injured him while performing its own business. It owed him a duty to abstain from injuring him either intentionally or by failing to exercise reasonable care, but it did not owe him the duty of active vigilance to see that he was not injured while upon its land merely by permission for his own convenience.” (Citing Nicholson v. Erie Railway Co., 41 N. Y. 525; Byrne v. N. Y. C. & H. R. R. R. Co., 104 N. Y. 363; Splittorf v. State of New York, 108 N. Y. 205.) “We think there is no proof whatever that the defendant, so far as its duty to plaintiff is concerned, failed to exercise reasonable care in the conduct of its business with regard to this machine.”
What the Trial Justice must have concluded then was that If the children’s presence in the elevator was actually unknown to defendant’s employees, they were trespassers pure and simple, and so, there being no evidence of a willful or wanton act which brought the injury, the defendant was not liable — the test of reasonable care to the extent of watching or looking about to ascertain their presence, and in thus guarding them, not then being applicable. Such a view correctly called forth the part of the charge excepted to.
The question, however,- comes up whether, even though deceased was a trespasser in that without the knowledge or permission of defendant’s employees she mounted and rode on *128 the elevator and to her accident, the facts disclosed it owed her no duty of care which was violated.
Aside and away from the statements contained in much of our case law, and the rules as to the degree of care owing to those stated to be trespassers, invitees, and bare licensees or permittees, the situation revealed by the evidence here seems to me to fairly raise a question of fact as to whether defendant’s employees, in the exercise of reasonable care, should have anticipated the probability, even the possibility that the deceased and/or her companion would climb onto the elevator when opportunity afforded, and as they did. The children’s nearness to the open floorway of the lift which was large and roomlike in appearance, the knowledge chargeable to defendant that children habitually frequented in and about the building, the employees’ rather intimate acquaintance with the children, and the knowledge of such children’s propensities with which they were chargeable, all this, it seems to me, presented factual questions for the jury as to whether, in the exercise of an incumbent duty of reasonable care, they were called upon to make some observation or perform some slight affirmative act which if accomplished would have prevented the fatality. After talking to the children immediately in their presence for a considerable time, they, deliberately arose, turned their backs to them and the open side of the elevator and then, without looking to see or doing anything regarding the presence of the children, operated it aloft to the third story, and throughout conducted themselves in such manner that, still not noticing that the children were there with them, this infant of tender years was in that manner permitted to fall from the protruding edge of the floor of the cage.
If the principles laid down in much case law in regard to the maintenance of places attractive to children, and the degree of care owing to a trespasser, are rigidly applied, then a correct charge was given. But in the cases which gave rise, to those rules, their facts made the law. (Note the quotation above from the old turntable case, Walsh v. Fitchburg R. R. Co., 145 N. Y. 301, supra.) And I find no case with facts similar to those presented here, where the owner of -the dangerous place or device has been freed from the duty of affirmatively exercising a reasonable degree of care to see that it does not bring injury to a young child known to be loitering nearby and who, it could reasonably be expected, might trespass to her injury. The statement above quoted from the turntable case, it seems to me, left the matter open for the declaration of such a rule of care when injuries to a very young child may as a matter of fact be said to have been the ‘ ‘ direct and probable and natural results ” of the heedlessness such as shown in this case. The *129 doctrine as to nonliability for injury caused by “ attractive nuisance ”, had for its foundation the necessities of industry and enterprise, and also perhaps the preservation of a freedom for one to do as he pleases with his own on his own. Early we forbade the use of spring-guns and stopped there, save in the cases of willful or wanton conduct. Trespassers were all in one class. No affirmative duty of active care to Avard off dangers was owing. So run the generalized statements.
The American Law Institute in its Eestatement of the Law of Torts (Vol. 2, § 339) states:
“ A possessor of land is subject to liability for bodily harm to young children trespassing thereon caused by a structure or other artifical condition Avhieh he maintains upon the land, if
(a) the place where the condition is maintained is one upon which the possessor knows or should know that such children are likely to trespass, and
(b) the condition is one of which the possessor knoAVS or should knoAV and which he realizes or should realize as involving an unreasonable risk of death or serious bodily harm to such children, and
(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling in it or in coming within the area made dangerous by it, and
(d) the utility to the possessor of maintaining the condition is slight as compared to the risk to young children involved therein.
Comment on Clause (a):
a. Necessity that children’s presence be caused by dangerous condition. It is not necessary that the defendant should know that the condition which he maintains upon his land is likely to attract the trespasses of children or that the children’s trespasses shall be due to the attractiveness of the condition. It is sufficient to satisfy the conditions stated in Clause (a) that the possessor knows or should know that children are likely to trespass upon a part of the land upon which he maintains a condition Avhieh is likely to be dangerous to them because of their childish propensities to intermeddle or otherwise. Therefore, the possessor is subject to liability to children Avho after entering the land are attracted into dangerous intermeddling by such a condition maintained by him although they were ignorant of its existence until after they had entered the land, if he knows or should know that the place is one upon which children are likely to trespass and that the condition is one with which they are likely to meddle.”
*130 In Mendelowitz v. Neisner (258 N. Y. 181, 185-186 [1932]), Judge Crane, after reference to the observance of property rights and stating that the rule of liability “ must not be so burdensome as to discourage all improvement,” then quoted the American Law Institute’s tentative draft of the foregoing quotation from the Restatement. And, it is to be noted, that the tentative draft was a somewhat more widespread statement of a rule of liability for injuries to trespassing children. It did not include either condition (c) or (d), (2 Eestatement, Torts, § 339) supra. That was in a case where the holding was that “ the condition of the wall did not involve an unreasonable risk of death or serious bodily injury which the owner should have realized ” (p. 186), and for that reason the plaintiff was denied his recovery. But in quoting the tentative draft of the Restatement, I do not sense that the Court of Appeals may be said to have repudiated it by the comment that it “ may be more liberal to the injured party than the long line of decisions in this State.” It was expressly said the case there in hand did not come “within this rule.” Thus in a sense the rule was used and the facts of the case found wanting.
In my judgment the undisputed evidence clearly presented questions of fact as to every one of the conditions stated aforesaid in the Restatement, as, being present, subjected the defendant to liability for damages caused by the death. Under the evidence the triers of the fact would have had evidence to support these findings: (1) the maintenance and operation of the elevator constituted a place where defendant knew, or should have knoAvn, that children such as' the deceased would be likely to trespass, (2) that such place AA’as one Avhich defendant lrneAV and realized or should have realized involved an unreasonable risk of death or serious bodily harm to children such as the deceased; (3) deceased, because of her youth, did not discover the dangerous condition or realize the risk involved in getting into the area thus made dangerous, and (4) the utility to the defendant of maintaining and operating the elevator was slight as compared to the risk it involved to the deceased.
The judgment should be reversed and a new trial ordered upon the ground that the trial court’s charge Avas too restrictive in its statement of the law as to defendant’s liability — in that the jury should have been charged in accordance with the rule given — and as above quoted — in the Restatement.
TTtt.t,, P. J., Heffernan, Foster and Lawrence,’ JJ., concur.
Judgment and order reversed on the law and facts, and a new trial ordered, with costs to appellant.